Brad H. Bearnson (#3633)
Wayne K. Caldwell (#9466)
Aaron K. Bergman (#13147)
BEARNSON & CALDWELL, LLC
399 North Main, Suite 270
Logan, Utah 84321
Telephone: (435)752-6300
Facsimile: (435)752-6301
Email: bbearnson@bearnsonlaw.com; wcaldwell@bearnsonlaw.com; and
abergman@bearnsonlaw.com
For emails, please cc: mandreasen@bearnsonlaw.com

*Attorneys for Plaintiff*

## IN THE DISTRICT COURT OF THE FIRST JUDICIAL DISTRICT
## COUNTY OF CACHE, STATE OF UTAH

| | |
|---|---|
| ICON HEALTH & FITNESS, INC., a Delaware corporation, | **COMPLAINT AND** |
| Plaintiff, | **JURY DEMAND** |
| vs. | |
| CONSUMERAFFAIRS.COM, INC., a Nevada corporation; CONSUMERS UNIFIED, LLC, a Nevada limited liability company; and DAVID ZACHARY CARMAN, an individual, | Civil No. _____ |
| | Judge: _____ |
| Defendants. | |

COMES NOW Plaintiff, ICON HEALTH & FITNESS, INC. (hereinafter "ICON"), by

and through its counsel, Brad H. Bearnson and the law firm of Bearnson & Caldwell, LLC, and

hereby complains against Defendants, CONSUMERAFFAIRS.COM, INC., CONSUMERS

UNIFIED, LLC, and DAVID ZACHARY CARMAN as follows:

## NATURE OF THE CASE

1.      This is a civil action seeking damages and injunctive relief. Defendants have damaged and continue to damage ICON and its reputation through a concerted scheme of biased and manipulative review posting related to ICON and its products. Defendants discriminatorily post reviews and ratings based solely on whether customers have paid fees, and thus using deception and manipulation, Defendants post negative reviews for those customers who do not pay, such as ICON, and post positive reviews for those who do pay. Defendants' actions have resulted in the incorrect and baseless degradation of ICON's good reputation, and Defendants have committed the same in an effort to coerce ICON into paying for Defendants' purported services and products.

## PARTIES

2.      ICON is a Delaware corporation, is the largest producer and manufacturer of exercise equipment in the world, and it started in and remains headquartered in Logan, Utah. ICON manufacturers numerous types of exercise equipment. It is the owner of such well known trademarks as NordicTrack, iFIT, ALTRA, PRO-FORM and FREEMOTION. It produces, manufacturers, markets, and ships its products worldwide. ICON originated from two college classmates who in 1977 began planning a business. By the 1980s, ICON introduced folding treadmills, an innovation that allowed people to take fitness equipment into their homes. Today, ICON provides fitness equipment around the world and is committed to empowering its customers with more active, balanced lifestyles by grounding its products in science, biomechanics, and research, ease of use, safety, and technology. Recent awards have included:

- 2016 Golf Digest Editor's Choice Award (Free Motion Fitness Dual Cable Cross)

- 2016 Consumer Reports Recommended Buy Award (NordicTrack Commercial 1750 and NordicTrack C1650)

- 2016 Consumer Reports Best Buy (NordicTrack Elite 9700 Pro and NordicTrack 790 Pro).

- 2016 Consumer Reports Best Buy (Pro-Form 9000 Pro)

- Product Partners with Le Tour de France (Pro-Form)

- Product Partners with the Boston Marathon (Pro-Form)

3. ConsumerAffairs.com, Inc. ("ConsumerAffairs") is a Nevada corporation. Consumers Unified, LLC ("Consumers Unified") is a Nevada limited liability company. David Zachary Carman ("Carman") is an individual who is the sole Manager of Consumers Unified and the President, sole Director, Secretary and Treasurer of ConsumerAffairs. ConsumerAffairs originated with James Hood, a former journalist, in 1998. On information and belief, ConsumerAffairs was then acquired by Carman in 2010. ConsumerAffairs purports to be an independent, trustworthy Web-based consumer news and resource center, which includes consumer news and recall information and hosts consumer review pages on numerous product brands, including products produced, manufactured, and marketed by ICON. On information and belief, Carman established a business model when he acquired ConsumerAffairs. This model was premised upon convincing consumer product/service companies to pay lucrative fees to become "accredited" members of ConsumerAffairs. Membership entitled such companies to

exclusive ConsumerAffairs ratings-related treatment and ratings image transformation services. Consumers Unified participates in those services which are listed in detail below and is the entity Carman uses to contract with and provide rating-related services to businesses that pay to become accredited members of ConsumerAffairs.com.

## GENERAL ALLEGATIONS

4.      ConsumerAffairs hosts web-based product or brand reviews, but also publishes its own version of an "Overall Satisfaction  Rating" based on an unspecified subset of star-rated reviews selected by ConsumerAffairs and a summary of star ratings 1-5 included in that subset. ConsumerAffairs also creates intentionally nuanced descriptions, designed to differentially influence and manipulate internet consumers. The heading on ConsumerAffairs.com internet review pages for paying members is entitled "Reviews and Complaints." In contrast, the heading on ConsumerAffairs.com internet review pages for non-paying companies is "Complaints and Reviews."

5.      ConsumerAffairs creates an even more misleading turn of phrase in search engine results. When consumers do internet searches containing a brand name or search for reviews of a brand name listed on the ConsumerAffairs website, non-paying brands produce search engine results that state "Top [number] Complaints and Reviews about [brand name]." If the brand has paid ConsumerAffairs their demanded lucrative fees, the search engine results specify "Top [number] Reviews and Complaints about [brand name]."

6.      In each instance, an overall star rating is also depicted matching ConsumerAffairs' rating for the given brand. However, ConsumerAffairs uses a deceptive, biased, and discriminatory practice when posting reviews and determining which will be included in the star ratings. The decisive factor is solely based on whether a company has agreed to pay a monthly fee, and on whether ConsumerAffairs sees the company as being exploitable by and thereby compelled to pay for ConsumerAffairs' services.

7.      For companies who agree to ConsumerAffairs' lucrative fee arrangements, they can have reviewers update a star rating, have a star rating removed and the text lined out if the consumer does not respond or the matter is addressed privately, or have the star rating entirely removed and the review text lined out by claiming that the complaint is not factual. None of these options are available to companies who do not pay ConsumerAffairs' lucrative setup and monthly fees.

8.      ConsumerAffairs also actively solicits and posts numerous positive reviews for paying members only. Only review pages of non-paying members contain a superimposed screen prompt on every page saying "Not Impressed With [non-paying brand]? Find a company you can trust," or "Consumer Recommended [paying brand]," Research top [Industry Product] recommendations on ConsumerAffairs," with a link to "Compare Top Alternatives" or "Compare Companies." None of these things are readily ascertainable by online consumers looking for reviews without combing fine print scattered about other parts of a website. Instead, superimposed on each paying member review page is a link to "Request more Information."

9.     ConsumerAffairs.com leads consumers to believe that it is an independent and trustworthy review site that can help consumers make an informed purchase decision. Beyond these practices, as set forth below there is substantial evidence that ConsumerAffairs has also intentionally not posted and removed legitimate positive reviews to specifically lower the total star rating to damage ICON and other nonpaying companies and to coerce brands including ICON to become lucrative fee-paying members.

10.     At all material times, Defendants benefitted and or intended to benefit from the activities of ConsumerAffairs Sales Account Executive Emily Burke and other relevant employees of ConsumerAffairs known to Defendants in carrying out the scheme alleged herein. Emily Burke began a series of "cold call" solicitations to ICON's Director of eCommerce, Travis Cox, emphasizing the number of "unique views" made by consumers to ConsumerAffairs.com relating to ICON's products.

11.     However, ConsumerAffairs would not disclose its pricing, and to disclose such, first tried to require ICON to sign a Non-Disclosure Agreement. By March of 2016, ICON had not signed and Emily Burke responded by providing more analytics of relating to views of ICON's brand "NordicTrack," showing 8,900 total views total with a purported average time of 23 minutes spent on ConsumerAffairs' "NordicTrack" review page. By May 2016, ICON had still not signed the Non-Disclosure Agreement or responded further to ConsumerAffairs' tactics. Emily Burke emailed again stating "[i]t has been two months and I think we could really help your business." In July of 2016, Emily Burke emailed again stating "I thought I'd give you your stats on your two brand profiles," and for NordicTrack listed "53K + views in the last year" and

for Pro-Form listed "24K + page views in the last year." Further, ConsumerAffairs.com tacitly threatened that for search engines, ConsumerAffairs rated on page 1 for no less than seventy-five (75) prominent search terms that directly related to ICON's products.

12.     On July 27, 2016, Travis Cox emailed back stating "[o]ur legal team won't sign the NDA [Non-Disclosure Agreement] just to see pricing as they feel that shouldn't be a trade secret."

13.     On August 5, 2016, ConsumerAffairs sent ICON a "Member Accreditation Agreement" (the "MAA"), which as a courtesy (presumably) removed the exorbitant $9,000.00 setup fee and required a $3,000 per month fee for each month ConsumerAffairs' "services" were provided. The MAA clearly provides that in contrast to non-paying companies, ConsumerAffairs will remove all negative feedback disputed by the company if the consumer does not respond within 5 days, the response is insufficient, the facts underlying the complaint are disputed, or the dispute is "resolved." Further, that any SEO / Marketing Plan will not be implemented until ICON's rating exceeds 3.5 stars.[1]

14.     However, if ICON did not sign its rating for NordicTrack and Pro-Form would stay at the biased, manipulated, near one-star review given by ConsumerAffairs. For instance on the ConsumerAffairs.com review page for NordicTrack, the super low rating is based on "45 ratings out of 222 reviews." The ConsumerAffairs.com review page for Pro-Form, again depicting an even lower rating, is based on "55 ratings out of 58 reviews."

---

[1] "SEO" stands for Search Engine Optimization, which generally speaking is the utilization of techniques and strategies to obtain a high ranking SERP, or Search Engine Page Placement.

15.    ConsumerAffairs represents and even touts its reviews as being the product of independent expertise, stating it has verified "609,949 reviews," requires contact information "to ensure our reviewers are real," uses "intelligent software that helps us maintain the integrity of reviews" and "moderators read all reviews to verify quality and helpfulness."[2]

16.    In reality, ConsumerAffairs utilizes its computer resources in order to puff the reputation of those companies who pay for its services and to deliberately degrade the good will and reputation of those who do not.

17.    For instance, contrast ConsumerReports.org, a nonprofit organization touting over 6-million users. ConsumerReports.org makes its money from charging subscription fees of consumers, engages in no outside advertising, and independently tests products utilizing applicable industry experts. In stark contrast to ConsumerAffairs, the Pro-Form Pro 2000 and the NordicTrack C1650 receive a perfect score (85) and a near perfect score (83), ranking as the two most recommended treadmills out of the folding treadmill category. YOWZA Fitness does not even make the list.

18.    Nor does YOWZA make the list under "budget" folding treadmills, where again ICON takes the show at having the NordicTrack C970 Pro, the NordicTrack C990, the Pro-Form Sport 7.5, and the Pro-Form Power 995i at 3rd 5th 7th and 15th place, respectively. Of the 20 treadmills in the market reviewed and "recommended" by ConsumerReports.org, five (5) of them, or 25% are ICON treadmills. None are from YOWZA Fitness.

---

[2] https://www.consumeraffairs.com/health/nordic-track.html (accessed 10-24-2016)

19.     The difference between these sites and ConsumerAffairs exists because ConsumerAffairs deliberately creates a biased, manipulated review system that not only favors those who pay, but also disfavors those who do not.

20.     For instance, as of the date of this Complaint ConsumerAffairs lists ten (10) different providers under the industry category of "Fitness Equipment." The sole "accredited" provider, YOWZA Fitness, is rated at nearly 5 stars. When a person clicks to see the reviews for YOWZA Fitness, the first review is dated July 12, 2016 and states "[t]he product is amazing and it's the best equipment ever."



The second review is dated out of chronological order, April 8, 2016, and again is very positive. The third review is dated October 20, 2016, and like the previous two, is out of chronological order and is very positive. A consumer would have to scroll down the page roughly three times to see a much less favorable review dated October 16, 2016 stating "I don't think I'd ever recommend it."



**John of Lowell, MI**
Oct. 16, 2016
Verified Reviewer ✔ Verified Buyer $

★★☆☆☆
*Satisfaction Rating*
🔲 *Resolution In Progress*

**Yowza Fitness**
Oct. 24, 2016

John,

I do apologize that you are unhappy with your machine. But the reason for talking with me was to determine the best option for you on the purchase. We did review the Sebring which had a little longer belt but you wanted to take the Osprey deal instead. If you wanted a more "robust" treadmill for yourself we have many options to choose from instead of our compact models.

I can tell you that I am 6'5" and have no issue with running or jogging on the Osprey. There are options when making a buying decision and we did go over the different options available and discussed 2 different treadmills also.

Please let me know if there is anything we can do to resolve the problem.

Regards,
Jason Brooks
Director of Sales & Marketing
Yowza

*Original review: Oct. 16, 2016*

I bought two treadmills from Yowza Fitness because they made a good deal on them. I made the purchase online, which was easy. Their customer service representatives were awesome and very helpful. The only thing is that I'm not too happy with the quality. The equipment doesn't seem to be that robust and the stride is way too short. It might work for my short daughter, but for me, now, it's just a boat anchor sitting in the living room. I don't think I'd ever recommend it.

21.     Such cherry picking of reviews does not occur for those brands that do not pay, and yet to obtain these manipulative advantages ConsumerAffairs requires ICON and other brands to pay exorbitant setup and monthly fees.

22.     During the course of communications with Burke, ICON felt as if it had no choice, and asked for materials necessary to go forward. ICON felt like it had no choice because of the negative posted review history, the impact of the lack of positive reviews and the bad overall star rating, and because ConsumerAffairs.com does not allow for non-paying brands to receive information about consumers who have posted reviews on their website in order to resolve complaints posted by those consumers and request that star rates be adjusted. Additionally, ICON was concerned that non-paying brands cannot have star ratings blocked if the consumer does not respond to a company's request for more information, the dispute is resolved privately or the factual basis for the complaint is not resolved.

23.     Burke provided a form of "ConsumerAffairs Member Accreditation Agreement,"
with Consumers Unified as the contracting party from the ConsumerAffairs end. The terms of
that form call for Consumers Unified (not ConsumerAffairs, Incorporated) defined in the
contract form as "ConsumerAffairs" to provide, among other things, the ConsumerAffairs
services described above that Burke touted would transform ICON's poor star-rating image.

24.     On information and belief, this form of contract is part of a new business model
incorporated in the ConsumerAffairs business by Carman after he acquired ConsumerAffairs and
formed Consumers United in 2010. The new business model is selling memberships to brands
like ICON to "transform" their review images. Carman has generally spoken about introducing
this business model in an interview with a Tulsa, Oklahoma newspaper. As alleged herein, the
negative manipulation and characterization of ratings by ConsumerAffairs is designed to coerce
brands to pay the lucrative fees for ConsumerAffairs to transform their ConsumerAffairs ratings
and images.

25.     Upon being informed of all the circumstances, ICON declined to enter the deal
because it did not believe that the coercive practices of ConsumerAffairs were just.

26.     The effect of ConsumerAffairs' tactics is not just disparate from what other
review outfits have to say about ICON – it is intentionally damaging, leading customers to obtain
a biased opinion of ICON and its products. For instance, the following Google Search for
"NordicTrack Reviews" produces this on the first page of each search:

**Top 222 Complaints and Reviews about NordicTrack**
https://www.consumeraffairs.com › Fitness Equipment ▾
★★★★★ Rating: 1.2 - 45 votes
I purchased the **NordicTrack** Incline Trainer x9i via **Nordictrack**.com on July 3, 2015. I paid for the .
How do I know I can trust these **reviews** about **NordicTrack**?

27.     The posting gives a very false, manipulated, and biased review of ICON. First, the

posting blatantly suggests that there are "222 Complaints and Reviews" that lead to a 1 star

rating. In reality, ConsumerAffairs' rating is based on a biased, untold subset of 45 reviews out

of 222 reviews:



28.     And when a consumer clicks on the "rating distribution" on the ConsumerAffairs

website, there is no mention of the other 177 reviews, where the 45 selected came from, or why

such a biased, and misrepresentative subset of reviews were selected:

29.     ConsumerAffairs' misleading, biased, and manipulative practices have a real and significant impact on ICON and other companies and brands. As stated in ConsumerAffairs' own July 6, 2016 email, "[o]ur brand partners use our services for our SEO, positive brand sentiment in SERP, utilization of ConsumerAffairs platform to resolve issues/retain customers/engage and ultimately acquire new customers that are further in buying [sic] funnel after reading that [sic] engagement and reviews from existing customers."

30.     As a conservative basis, ICON estimates that a total of 9,000 unique views for NordicTrack and 4,500 unique views for Pro-Form take place each month on ConsumerAffairs' website. ConsumerAffairs' click-to-conversion rate for each unique page view equates to 1,800 lost NordicTrack customers, and 900 lost Pro-Form customers, each month. ConsumerAffairs' concerted efforts over just the last year have cost ICON no less than ten million, five hundred and thirty thousand dollars ($10,530,000.00).

### FIRST CLAIM FOR RELIEF
(Commerce and Trade Violations - All Defendants)

31.     Plaintiff realleges the allegations in paragraphs 1 to 30.

32.     Plaintiff is a person which has suffered and continues to suffer ascertainable losses of money as alleged in paragraph 30 as a substantial, direct and proximate result of the Defendants', and each of them, past and ongoing willful use or employment of a method, act or practice declared unlawful under Title 13 of the Utah Code, as amended.

33.     Under the Unfair Practices Act, U.C.A. sections 13-5-1 *et. seq.*, Defendants are liable as follows:

(a)     Under section 13-5-3(1) by engaging in discrimination of price to the effect of lessening competition, and injuring, destroying, and preventing competition with other persons who knowingly grant or receive the benefit of such discrimination or the customers of either.

(b)     Under section 13-5-3(3), by obtaining exorbitant setup fees and monthly fees which are not supported by a service or good of value.

34.     Under the Unfair Competition Act, U.C.A. sections 13-5a-101, *et. seq.*, Defendants are liable as follows:

(a)     Under section 13-5a-102(4) by engaging in unfair competition. Specifically, through the above explained manipulations, misrepresentations, and biased activities, Defendants have conducted an intentional business act, and continue to conduct such acts, that are unlawful or fraudulent, as set forth specifically above, and which have led to the material diminution of value of ICON's intellectual property.

(b)     Under section 13-5a-102(4), by engaging in "malicious cyber activity" in unlawfully utilizing computer resources to intimidate ICON other companies, to coerce ICON and other companies, and/or by intentionally or recklessly intending to defraud or materially cause damage or disruption to the computing resources of ICON and other companies, and the consumers who rely upon them.

35.     Under the Utah Consumer Sales Practices Act, U.C.A. sections 13-11-1 *et. seq.*, the Legislature enacted certain provisions to protect consumers and to protect suppliers such as

ICON and others who in good faith comply with the provisions of the Act. Under the Act, Defendants are liable as follows:

(a) Under section 13-11-4, by indicating as set forth above a sponsorship, approval, performance characteristic, or other qualities of ICON products when in fact they have not such a characteristic.

(b) Under section 13-11-4, by indicating as set forth above that ICON products are of a lower standard, quality, grade, style, or model, when in fact it is not.

(c) Under section 13-11-4, by indicating as set forth above that Defendants have the sponsorship, approval, or affiliation with individuals, persons, and businesses that it does not have.

(d) Under section 13-11-5, by engaging in as set forth above an act that violates the Utah Consumers Sales Practices Act, wherein under the circumstances such acts were unconscionable.

36. Under the Truth in Advertising Act, U.C.A. sections 13-11a-1 *et. seq.*, Defendants are liable as follows:

(a) Under section 13-11a-3, by causing as set forth above likely confusion or misunderstanding as to the source, sponsorship, and approval of the goods of ICON and other businesses.

(b) Under section 13-11a-3, by causing as set forth above likely confusion or misunderstanding as to affiliation, connection, association with, or certification by ICON, or other individuals, persons, and businesses that legitimately review ICON products.

(c)     Under section 13-11a-3, by representing, as set forth above, that ICON's goods and services are of a lower standard, quality, or grade, when in fact they are not.

(d)     Under section 13-11a-3, by disparaging, as set forth above, ICON's goods, services, and business through the use of false and/or misleading representations of fact.

(e)     Under section 13-11a-3, by representing, as set forth above, that Defendants are providing an independent assessment and comparison of goods or businesses within the fitness equipment industry, including ICON, when in fact Defendants' assessments are not independent.

(f)     Under section 13-11a-3, by making, as set forth above, a comparison among goods within the fitness equipment industry, including ICON's, and doing so in a manner that creates confusion and/or misunderstanding as to the actual qualities of the goods being compared.

37.     Defendants, and each of them, have also conspired together and aided and assisted one another in the commission of the unlawful practices alleged in paragraphs 31 thru 36.

38.     Under the Truth in Advertising Act, section 13-11a-4, Plaintiff has a right to a private cause of action, is entitled to an order from the Court enjoining Defendants' illegal practices, is entitled to recover its actual damages, costs, and attorney's fees, and is entitled to an order from the Court ordering Defendants promulgate sufficient corrective advertising in the same distribution, frequency, and veracity in which Defendants have violated the Act.

39.     Under the Unfair Competition Act, section 13-5a-103, ICON has the right to recover its actual damages, costs, attorney's fees, and punitive damages.

40.     Under the Unfair Practices Act, section 13-15-14, ICON has the right to recover its actual damages, treble damages, and all court costs, and is entitled to appropriate injunctive relief against Defendants from continuing the above explained wrongful conduct.

41.     As a result of Defendants' above wrongful conduct, Plaintiff has been damaged as set forth in paragraph 30 above. Plaintiff reserves the right to move for and allege punitive damages as provided for under the Utah Rules of Civil Procedure.

## SECOND CLAIM FOR RELIEF
(Intentional Interference with Prospective Economic Relations – All Defendants)

42.     Plaintiff realleges the allegations in paragraphs 1 to 41.

43.     Plaintiff had and has a reasonable prospective economic relationship with potential and interested consumers who have clicked and continue to click on ConsumerAffairs' review page for NordicTrack and Pro-Form, as established by Consumer's online click conversion rate track record.  The Defendants and each of them, as third parties have interfered and continue to interfere with that prospective economic relationship by the improper means of misrepresentation and deception for the improper purpose of negatively impacting Plaintiffs' products as set out above.

44.     Defendants, and each of them, have also conspired together and aided and assisted one another in the intentional interference.

45.     As alleged in paragraph 30, Plaintiff has been and continues to be damaged as a substantial, direct and proximate result of the Defendants, and each of them, having intentionally interfered with those prospective economic relationships. Plaintiff reserves the right to move for and allege punitive damages.

## THIRD CLAIM FOR RELIEF
(Federal RICO – All Defendants)

46.   Plaintiff realleges the allegations in paragraphs 1 to 34.

47.   Pursuant to 18 U.S.C. § 1964(c), Plaintiff as a legal entity is a person which has been injured in its business or property by reason of a violation of 18 U.S.C. § 1962(c) and/or (d).

48.   The Defendants, and each of them, are persons which have been associated with the following alternative enterprises:

  (a)   All Defendants in association with each other (as to the claims against all Defendants);

  (b)   All Defendants in association with each other and Burke (as to the claims against all Defendants);

  (c)   ConsumerAffairs (as to the claims against Carman and Consumers United);

  (d)   Consumers United (as to the claims against Carman and ConsumerAffairs);

  (e)   ConsumerAffairs and Burke (as to the claims against Carman and Consumers United);

  (f)   Consumers United and Burke (as to the claims against all Defendants);

  (g)   ConsumerAffairs in association with the unwitting internet consumers which have been the object of the Defendants' deceptive scheme set out above (as to the claims against all Defendants);

(h)     Consumers United in association with the unwitting internet consumers which have been the object of the Defendants' deceptive scheme set out above (as to the claims against all Defendants); and/or

(i)     ConsumerAffairs and Consumers United in association with the unwitting internet consumers which have been the object of the Defendants' deceptive scheme set out above (as to the claims against all Defendants).

49.     The activities of the above enterprises have affected interstate commerce between Utah, where Plaintiff and its officers and employees were located, and Tulsa Oklahoma where the Defendants and Burke were headquartered, and across the nation regarding thousands of impacted online consumers.

50.     The Defendants, and each of them, conducted (operated and managed) the above alternative enterprises' affairs through a pattern of racketeering activities. The racketeering activities defined by 18 USC §1961 (1) (A) and (B) include:

(a)     The Defendants, and each of them, by design and through their agents for their own benefit have repeatedly engaged in knowing participation in multiple predicate acts of internet wire fraud in violation of 18 U.S.C. § 1343 by having devised or intending to devise the above-alleged scheme or artifice to defraud, or for obtaining money by means of false or fraudulent pretenses, representations as alleged in detail in paragraphs 1-24 above. Those activities substantially involved and/or continue to involve use of interstate wires via the internet for purposes of the email correspondence set out above, the ConsumerAffairs.com internet review site set forth in detail in paragraphs 1-24 above as to Consumer Cellular and/or its

competitor YOWZA Fitness, and ConsumerAffairs' positioning and word content for results of internet consumers searches containing or migrating to "NordicTrack," "Pro-Form," "NordicTrack Reviews," or "Pro-Form Reviews."

(b)     Defendants, and each of them, have also engaged in acts and/or threats constituting racketeering activities involving conduct alleged in paragraphs 1 to 30 and 50(a) chargeable as multiple attempts at theft by extortion proscribed by U.C.A. § 76-6-412 (criminal attempt involving a 2nd Degree Felony), and U.C.A. § 76-6-406 (extortion, a 2nd Degree Felony), punishable also by treble damages, costs, and attorney's fees. See U.C.A. § 76-6-412(2).

51.     Defendants by design and through their agents for their own benefit have repeatedly taken substantial steps to compel or induce ICON to deliver money to Consumers United for a ConsumerAffairs accredited membership by instilling in the ICON a fear that, if the money is not so delivered, then ConsumerAffairs will:

(a).     wrongfully cause damage to ICON's property (goodwill, reputation, and monetary income) by continuing to manipulate the ConsumerAffairs review pages to negatively impact Consumer Cellular as alleged in paragraphs 1 to 30;

(b).     engage in conduct constituting the ongoing crime of federal wire fraud as alleged in paragraphs 1 to 30 and 50(a); and/or

(c).     expose ICON to deceptive publication of facts tending to subject ICON to contempt or ridicule as alleged in paragraphs 1 to 30.

52.     The multiple acts of mail and wire fraud constitute a pattern of racketeering in that theschemes involved and continue to involve repetitive acts of misrepresentation and

deception as to both ICON and its competitor YOWZA Fitness published repeatedly (daily) to the thousands of unique view ConsumerAffairs.com internet review page consumers each month as tracked by ConsumerAffairs, and published repeatedly in internet search engine consumer search results involving ICON and/or YOWZA Fitness. Added to that pattern are the related above-alleged repeated attempts of unlawful extortion of ICON under Utah law.

53.     This pattern of racketeering has been continuous for well over a year and continues unabated.

54.     Defendants, and each of them, have agreed and conspired with one another and with Emily Burke as co-conspirator to violate 18 U.S.C. § 1962(c), as alleged above.

55.     As alleged in paragraph 30, Plaintiff has been and continues to be directly and proximately injured in its business and/or property by reason of the above-alleged pattern of predicate acts of racketeering. Plaintiff is entitled to treble damages and reasonable attorney fees under 18 U.S.C. § 1964(c).

## FOURTH CLAIM FOR RELIEF
(Defamation – All Defendants)

56.     Plaintiff realleges the allegations in paragraphs 1 to 55.

57.     The Defendants have made and continue to make false and defamatory representations regarding Plaintiff as set forth in paragraphs 1-30 above. The defamatory statements have been and continue to be published to thousands of internet consumer who do internet searches for or that take them to "NordicTrack," "Pro-Form," "NordicTrack Reviews," or "Pro-Form Reviews" or who click on the ConsumerAffairs.com review page for NordicTrack and/or Pro-Form.

58.     Defendants, and each of them, have also conspired together and materially aided and assisted one another in these past and ongoing defamatory statements.

59.     Plaintiff has been specially damaged by the false and defamatory statement publications as alleged in paragraph 30.

## JURY DEMAND

Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prayers for judgment against Defendants, and each of them, as follows:

(1)     For monetary damages on all claims to be proven at trial, but currently estimated at no less than $10,530,000.00;

(2)     For treble damages;

(3)     For equitable, injunctive, and declaratory relief as the court sees fit;

(4)     For reasonable attorney fees and costs;

(5)     For all costs and disbursements related to this action.

(6)     For such other relief as the Court deems just and equitable, including without limitation that Defendants cease their actionable practices and reserving the right to amend to allege punitive damages on Plaintiff's claims to the extent not precluded by law.

DATED this 1st day of November, 2016.

BEARNSON & CALDWELL, LLC

/s/ Brad H. Bearnson
Brad H. Bearnson
Attorneys for Plaintiff