Randy L. Dryer (924)
Richard Mrazik (10623)
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, UT 84111
Telephone:  801-532-1234
Facsimile:  801-536-6111
RDryer@parsonsbehle.com
RMrazik@parsonsbehle.com

Cameron Stracher (*pro hac vice* pending)
4 New York Plaza, 2d Floor
New York, NY 10004
Telephone:    212-743-6513
Facsimile:    646-810-3089
cam@stracherlaw.com

*Attorneys for Defendants*

---

# UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| ICON HEALTH & FITNESS, INC., a Delaware corporation, | **MOTION TO DISMISS PLAINTIFF'S CLAIMS WITH PREJUDICE** |
| Plaintiff, | Case No. 1:16-cv-00168-DBP |
| vs. | Magistrate Judge Dustin B. Pead |
| CONSUMERAFFAIRS.COM, INC., a Nevada corporation, CONSUMERS UNIFIED, LLC, a Nevada limited liability company; and DAVID ZACHARY CARMAN, an individual | |
| Defendants. | |

Defendants ConsumerAffairs.com, Inc., Consumers Unified, LLC, and David Zachariah Carman (sued incorrectly herein as "David Zachary Carman") respectfully submit this Motion to Dismiss Plaintiff's Claims with Prejudice.

## RELIEF SOUGHT

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants respectfully request that the Court dismiss Plaintiff's First, Second, Third, and Fourth Claims for Relief with prejudice on two bases.   First, each claim for relief is barred by Section 230 of the Communications Decency Act.  *See* 47 U.S.C. § 230(c)(1).  Second, Plaintiff's Complaint fails to plead sufficient facts to make Plaintiff's claims for relief plausible on their face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   Further, independent of the Court's decision regarding dismissal of Plaintiff's claims, Defendants request that the Court dismiss David Zachary Carman and Consumers Unified, LLC as parties because Plaintiff has failed to plead any cognizable claim against those two Defendants.

## INTRODUCTION

This lawsuit concerns ratings and reviews posted by consumers about Plaintiff's business on the website www.consumeraffairs.com.   Plaintiff does not challenge the accuracy of any of the reviews or ratings on the consumeraffairs.com website; rather, Plaintiff complains about how reviews and ratings are chosen, collected, edited, posted, organized, and presented on the website.   But choosing what to publish, and how to collect, edit, post, and organize content supplied by third parties, cannot give rise to liability because those activities constitute publishing activities that are immune from liability under Section 230 of the Communications Decency Act.

Moreover, even without the immunity provided by Section 230, each of Plaintiff's claims for relief fails because Plaintiff's Complaint fails to plead sufficient facts to make Plaintiff's claims for relief plausible on their face.   Accordingly, Plaintiff's Complaint should be dismissed with prejudice.

## FACTUAL BACKGROUND

### The Parties

Defendant ConsumerAffairs.com, Inc. ("ConsumerAffairs") was founded in 1998 by James R. Hood, a veteran journalist. Compl. ¶ 3. According to Plaintiff, "ConsumerAffairs hosts web-based product or brand reviews," and publishes brand "star ratings" (ranging from 1-star to 5-star) based on reviews submitted by consumers. *Id. ¶* 4.

Defendant Consumers Unified, LLC is an entity that contracts with businesses to provide rating-related services to members of ConsumerAffairs.com. *Id.* ¶ 3. Defendant David Zachariah Carman ("Carman") is the Managing Director of Consumers Unified and President of ConsumerAffairs *Id.* ¶3.

Plaintiff Icon Health & Fitness, Inc. purports to be "the largest producer and manufacturer of exercise equipment in the world." *Id.* ¶ 2. It claims to own a number of well-known trademarks, have won numerous awards, and to be "committed to empowering its customers with more active, balanced lifestyles by grounding its products in science, biomechanics, and research, ease of use, safety, and technology." *Id.*

### Plaintiff's Claims

According to Plaintiff, at some unspecified time, ConsumerAffairs' Sales Account Executive Emily Burke made a series of "cold calls" to Plaintiff "emphasizing the number of 'unique views' made by consumers to ConsumerAffairs.com relating to ICON's products." *Id.* ¶ 10. Burke would not disclose any pricing information, however, until Plaintiff signed a Non-Disclosure Agreement. *Id.* ¶ 11. When Plaintiff did not sign the agreement, Burke provided more information about the number of page views of Plaintiff's "NordicTrack" brand on ConsumerAffairs.com. *Id.* Plaintiff still would not sign the Non-Disclosure Agreement, so

Burke responded with further emails about how ConsumerAffairs could help Plaintiff's business, "tacitly threaten[ing] that for search engines, ConsumerAffairs rated on page 1 for no less than seventy-five (75) prominent search terms that directly related to ICON's products." *Id.*

In August, 2016, without an NDA in place, ConsumerAffairs sent Plaintiff its "Member Accreditation Agreement." *Id.* ¶ 13. According to Plaintiff, the Accreditation Agreement provided that "in contrast to non-paying companies, ConsumerAffairs will remove all negative feedback disputed by the company if the consumer does not respond within 5 days, the response is insufficient, the facts underlying the complaint are disputed, or the dispute is 'resolved.'" *Id.* If Plaintiff did not sign the Accreditation Agreement, it alleges, the "rating for NordicTrack and Pro-Form would stay at the biased, manipulated, near one-star review given by ConsumerAffairs." ¶ 14. According to Plaintiff, "ConsumerAffairs utilizes its computer resources in order to puff the reputation of those companies who pay for its services and to deliberately degrade the good will and reputation of those who do not," *id.* ¶ 16, in order to "coerce" companies "to pay exorbitant setup and monthly fees." *Id.* ¶¶ 9, 21.

As evidence that "ConsumerAffairs deliberately creates a biased, manipulated review system that not only favors those who, but also disfavors those who do not," *id.* ¶19, Plaintiff points to its competitor, YOWZA Fitness. YOWZA is the only accredited member in the Fitness Equipment category on ConsumerAffairs.com and "is rated at nearly 5 stars." *Id.* ¶ 20. According to Plaintiff, the reviews for YOWZA are not presented in chronological order, as they are for non-paying members, but are "cherry picked" so that the best reviews appear first. *Id* ¶¶ 20-21. In addition, according to Plaintiff, ConsumerAffairs creates a "misleading turn of phrase in search engine results," returning searches for non-paying brands that state "Top [number] Complaints and Reviews about [brand name]" while searches for paying brands state "Top

[number] Reviews and Complaints about [brand name]." *Id.* ¶ 5; *see also* ¶ 27 (internal quotation marks omitted; brackets in original). Finally, Plaintiff alleges that its rating on ConsumerAffairs.com "is based on a biased, untold subset of 45 reviews of out 222 reviews," *id.,* with "no mention of the other 177 reviews, where the 45 selected came from, or why such a biased, and misrepresentative subset of reviews were selected." *Id.* ¶ 28.

Upon learning of these circumstances, Plaintiff "declined to enter the deal because it did not believe that the coercive practices of ConsumerAffairs were just." *Id.* ¶ 25. Instead, it brought this lawsuit on November 4, 2016, alleging violation of Utah's Unfair Practices Act, Unfair Competition Act, Consumer Sales Practices Act, and Truth in Advertising Act, Compl. ¶¶ 31-41; intentional interference with prospective economic relations, Compl. ¶¶ 42-45; defamation, Compl. ¶¶ 56-59; and violation of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"). Compl. ¶¶ 46-55. Defendants timely removed the case to this Court on December 13, 2016, and now file this motion to dismiss Plaintiff's Complaint with prejudice.

## THE RULE 12 STANDARD FOR GRANTING A MOTION TO DISMISS

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). A district court must dismiss a complaint under Rule 12(b)(6) if it fails to state such a claim. *See*, *e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* Neither mere "'labels and conclusions'" nor "'naked assertion[s]' devoid of 'further factual enhancement'" are sufficient to comply with Rule 8. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). Further, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—"that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. Rule Civ. Proc. 8(a)(2)).

## ARGUMENT

The gravamen of Plaintiff's Complaint is that ConsumerAffairs manipulates the organization and presentation of consumer ratings and reviews—*i.e.*, the speech of others—submitted to ConsumerAffairs.com to make those companies purchasing ConsumerAffairs' services look better and to make those companies who do not purchase those services look worse. Even accepting all of Plaintiff's well-pleaded factual allegations as true, Plaintiff's Complaint should be dismissed with prejudice because Defendants' selection, editing, organizing, and posting of consumer reviews of Plaintiff's products are publishing activities that are immune from liability under Section 230 of the Communications Decency Act.

Moreover, even without the immunity provided by Section 230, each of Plaintiff's claims for relief fails because Plaintiff's Complaint fails to plead sufficient facts to make Plaintiff's claims for relief plausible on their face.

I.    **SECTION  230  OF  THE  COMMUNICATIONS  DECENCY  ACT  BARS
      LIABILITY FOR EACH OF PLAINTIFF'S CLAIMS FOR RELIEF.**

"Congress addressed the right to publish the speech of others in the Information Age
when it enacted the Communications Decency Act of 1996 (CDA). *See* 47 U.S.C. § 230." *Jane
Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 15 (1st Cir. 2016).  Under Section 230 of the
CDA, Congress provided immunity to websites that host content posted by third parties.  That
section provides, in pertinent part: "No provider or user of an interactive computer service shall
be treated as the publisher or speaker of any information provided by another information
content provider."  47 U.S.C. § 230(c)(1).  "[W]eb site operators," such as ConsumerAffairs,
"are providers of interactive computer services within the meaning of Section 230."  *Universal
Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 419 (1st Cir. 2007).  The reviews and ratings
submitted by consumers to ConsumerAffairs.com are "information provided by another
information content provider" under Section 230.  *See id.* (message board postings by individual
posters on web site are "information content providers" under Section 230).

Under Section 230, "lawsuits seeking to hold [an Internet website] liable for its exercise
of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw,
postpone, or alter content—are barred."  *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir.
1997).  "Congress clearly enacted § 230 to forbid the imposition of publisher liability on a
service provider for the exercise of its editorial and self-regulatory functions."  *Ben Ezra,
Weinstein, & Co., Inc. v. Am. Online Inc.*, 206 F.3d 980, 986 (10th Cir. 2000).

Numerous courts have rejected the assertion that a website loses its Section 230
immunity merely by selecting, filtering, editing, and categorizing content developed by others.
The reason is that such conduct does not turn the website operator into an "information content
provider" with respect to the publication of third party-generated content.  *See Levitt v. Yelp!*

*Inc.*, 2011 WL 5079526 at \*6 (N.D. Cal. Oct. 26, 2011), *aff'd on other grds.*, 765 F.3d 1123 (9th Cir. 2014) ("Plaintiffs' allegations … based on Yelp's alleged manipulation of their review pages - by removing certain reviews and publishing others or changing their order of appearance - falls within the conduct immunized by § 230(c)(1)"); *Kimzey v. Yelp! Inc.,* 836 F.3d 1263, 1270 (9th Cir. 2016) (website's star rating system based on user inputs protected from liability under Section 230).[1]

The provisions of Section 230 have been construed broadly, affording website operators and other Internet service providers substantial protection from liability for a host of claims arising from content posted by third parties.  *See, e.g.*, *Doe v. SexSearch.com*, 551 F.3d 412 (6th Cir. 2008) (Section 230 defeated claims for breach of contract and negligent misrepresentation brought by user who was arrested for having sex with minor who improperly posted profile to adult dating service website); *Carafano v. Metrosplash.com*, 339 F.3d 1119 (9th Cir. 2003) (Section 230 defeated claims for publication of private facts, misappropriation, defamation, and negligence arising from fake profile posted by user of dating website); *Doe v. MySpace, Inc.*, 474

---

[1] *See also Batzel v. Smith*, 333 F.3d 1018, 1031 (9th Cir. 2003) (Section 230 applies even where website takes "some affirmative steps to edit the material posted"); *Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1173 at n.36  ("filtering for obscenity or 'spam'" is a "kind of minor editing and selection" that does not defeat Section 230 immunity); *Ben Ezra, Weinstein, & Co. v. Am. Online, Inc.*, 206 F.3d 980, 985-86 (10th Cir. 2000) (rejecting argument that service provider's deletion of some, but not all, inaccurate data about plaintiff  defeats Section 230 immunity); *Shiamili v. The Real Estate Group,* 952 N.E.2d 1011, 1019 (N.Y. 2011) (dismissing claims under Section 230 despite allegations that defendants selected content for publication, moved content to a stand-alone post, and added heading, sub-heading, and illustration to content); *Donato v. Moldow,* 865 A.2d 711, 725-26 (N.J. Super. Ct. App. Div. 2005) (holding Section 230 protected forum operator who regularly deleted and censored user posts); *Ascentive, LLC v. Opinion Corp*., 842 F. Supp. 2d 450, (E.D.N.Y. 2011) (dismissing claims under Section 230 despite allegations that defendants invited the submission of negative reviews and altered the manner in which the reviews were displayed); *Hill v. StubHub, Inc.,* 727 S.E.2d 550, 560 (N.C. Ct. App. 2012), *review denied* 736 S.E.2d 757 (N.C. 2013) (dismissing claims under Section 230 despite allegations that defendant "encouraged" and "controlled" publication of unlawful material).

F. Supp. 2d 843 (W.D. Tex. 2007) (Section 230 defeated claim for negligence arising from sexual assault of user), *aff'd*, 528 F.3d 413 (5th Cir. 2008); *Asia Econ. Inst. v. Xcentric Ventures, LLC*, 2011 WL 2469822 (C.D. Cal. May 4, 2011) (Section 230 defeated claims for unfair business practices, defamation, false light invasion of privacy, intentional and negligent interference with prospective economic relations, deceit and fraud arising from negative reviews posted to RipoffReport.com and the website's use of meta tags for search engine optimization); *Black v. Google Inc.*, No. 10-02381, 2010 WL 3222147 (N.D. Cal. Aug. 13, 2010) (Section 230 defeated various claims arising from Google's source code, which enabled third party comment), *aff'd*, 457 Fed. App'x 622 (9th Cir. 2011); *Dart v. Craigslist*, 665 F. Supp. 2d 961 (N.D. Ill. 2009) (Section 230 defeated sheriff's suit claiming Craigslist's "erotic/adult services" section constituted public nuisance and facilitated prostitution).

As the First Circuit most recently held: "Congress did not sound an uncertain trumpet when it enacted the CDA, and it chose to grant broad protections to internet publishers." *Backpage.com, LLC*, 817 F.3d at 29.   Those protections are broad enough to bar each of Plaintiff's claims for relief here.

### A.   Plaintiff's State Law Claims Are Barred by Section 230.

Section 230 "creates a federal immunity to *any* state law cause of action that would hold computer service providers liable for information originating with a third party."  *Ben Ezra, Weinstein, & Co., Inc.*, 206 F.3d at 984–85 (10th Cir. 2000) (emphasis added).  ConsumerAffairs is a computer service provider, *Universal Commc'n Sys., Inc.*, 478 F.3d at 419, and the basis of each of Plaintiff's state law claims is ConsumerAffairs' editing, organization, and posting of reviews and rating prepared by third party consumers.  Accordingly, Section 230 bars Plaintiff's state law claims.

1.      **Plaintiff's commerce and trade claims are barred by Section 230.**

Plaintiffs First Claim for Relief alleges ConsumerAffairs' editing, organization, and posting of reviews and ratings prepared by third party consumers violates Utah's Unfair Practices Act, Unfair Competition Act, Consumer Sales Practices Act, and Truth in Advertising Act.  But because ConsumerAffairs is merely exercising its editorial functions as a publisher of content provided by third parties, Section 230 bars liability for the commerce and trade violations alleged by Plaintiffs.  *See, e.g.*, *Green v. Am. Online (AOL)*, 318 F.3d 465, 473 (3d Cir. 2003) (affirming district court's decision that 47 U.S.C. § 230(c) provides immunity for alleged violations of New Jersey Consumer Fraud Act); *e360Insight, LLC v. Comcast Corp.*, 546 F. Supp. 2d 605, 609 (N.D. Ill. 2008) (holding 47 U.S.C. § 230(c) precludes a claim for deceptive or unfair practices barred by the Illinois Consumer Fraud Act); *Doe v. Friendfinder Network, Inc.*, 540 F. Supp. 2d 288, 298 (D.N.H. 2008) (holding 47 U.S.C. § 230(c) bars a claim for violation of the New Hampshire Consumer Protection Act).

Accordingly, Plaintiff's First Claim for Relief should be dismissed.

2.      **Plaintiff's tortious interference claim is barred by Section 230.**

Plaintiffs Second Claim for Relief—for intentional interference with prospective economic relations—is based on the same set of allegations underlying the rest of Plaintiff's state law claims.  As with Plaintiff's commerce and trade violation claims, the immunity provided by Section 230 also bars claims for tortious interference.  *See, e.g., Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 260 (4th Cir. 2009) (holding Consumeraffairs.com is entitled to Section 230 immunity from a claim for tortious interference with a business expectancy); *e360Insight,*546 F. Supp. 2d at 609 (holding 47 U.S.C. § 230(c) precludes a state law claim for tortious interference with prospective economic advantage); *PatentWizard, Inc. v. Kinko's, Inc.*, 163 F. Supp. 2d 1069, 1071 (D.S.D. 2001) (holding Section 230 bars claim for

aiding and abetting interference with prospective business relationships); *Schneider v. Amazon.com, Inc.*, 31 P.3d 37, 39 (Wash. Ct. App. 2001) (holding trial court correctly determined Section 230 bars claim for tortious interference with a business expectancy).

Accordingly, Plaintiff's Second Claim for Relief should be dismissed.

### 3.     Plaintiff's defamation claim is barred by Section 230.

The gist of Plaintiffs' defamation claim is that ConsumerAffairs' summary of star ratings is defamatory because it wrongly omits some reviews from its calculation.  *See* Compl. ¶ 9 (alleging that ConsumerAffairs has "intentionally not posted and removed legitimate positive reviews to specifically lower the total star rating to damage ICON") and ¶ 27 (alleging that Icon's star rating "is based on a biased, untold subset of 45 reviews out of 222 reviews").[2]  This claim is barred under Section 230 because it alleges nothing more than that Defendants exercise their traditional editorial functions by reviewing, filtering and summarizing the content provided by others.  *See Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1170-71 (9th Cir. 2008) ("any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230."); *Levitt*, 2011 WL 5079526, at *6 (allegations that Yelp removed reviews and changed their order of appearance "falls within the conduct immunized by § 230"); *Braverman v. Yelp, Inc.*, 2013 WL 3335071 at *3, (N.Y. Sup. Ct. June 28, 2013) ("Yelp's alleged act of filtering out positive reviews does not make Yelp the creator or developer of the alleged defamatory reviews.");

---

[2] Plaintiff's claim that "ConsumerAffairs' rating [of NordicTrack] is based on a biased, untold subset of 45 reviews out of 222 reviews," is contradicted by its own pleading.  The screen shot that Plaintiff provides in paragraph 27 of its Complaint clearly states that NordicTrack's "Overall Satisfaction Rating" is "Based on 45 *ratings* out of 222 *reviews.*"  Compl. ¶ 27 (emphasis added).  Thus, ConsumerAffairs.com accurately states the number of ratings used to calculate NordicTrack's Overall Satisfaction Rating, and reveals that 177 additional reviews of NordicTrack are available to be viewed on ConsumerAffairs.com.

*Kimzey v. Yelp Inc.*, No. C13–1734RAJ, 2014 WL 1805551 at *2 (W.D. Wash. May 7, 2014) (rejecting arguments that Yelp was an "information content provider" because "Yelp designed and created the star rating system" to rate businesses); *Ascentive, LLC v. Opinion Corp.*, 842 F. Supp. 2d 450, 476 (E.D.N.Y. 2011) ("The fact that the defendants invite postings and then in certain circumstances alter the way those postings are displayed is not the 'development' of information for Section 230 purposes.").

Indeed, even an allegation that a website removed reviews in bad faith, to lower a plaintiff's overall rating, does not alter Section 230 immunity.  As the Northern District of California explained in rejecting similar allegations made against Yelp's "aggregate business rating (the star rating at the top of each business's review page)," *motive* is not even relevant:

> [F]inding a bad faith exception to immunity under § 230(c)(1) could force Yelp to defend its editorial decisions in the future on a case by case basis and reveal how it decides what to publish and what not to publish.  Such exposure could lead Yelp to resist filtering out false/unreliable reviews (as someone could claim an improper motive for its decision), or to immediately remove all negative reviews about which businesses complained (as failure to do so could expose Yelp to a business's claim that Yelp was strong-arming the business for advertising money).

*Levitt,* 2011 WL 5079526 at *7-9.  "Were it otherwise, [Section 230] immunity could be avoided simply by reciting a common line that user-generated statements are not what they say they are." *Kimzey,* 836 F.3d at 1269.

Thus, Plaintiff's claims that Defendants "favor" accredited members, Compl. ¶ 19, arrange reviews out of chronological order, *id.* ¶ 20, "cherry pick" which reviews to publish, *id.* ¶ 21, and select a "subset" of reviews to create star ratings, *id.* ¶ 27, are all publishing activities that are immune from liability under Section 230.

**B.**     **Plaintiff's RICO claim is barred by Section 230.**

Section 230 also bars Plaintiff's claims for alleged RICO violations because those claims arise from the publishing of content on ConsumerAffairs.com.  *See, e.g.,* Compl. ¶¶ 50(a) (alleging that Defendants used ConsumerAffairs.com and "word content" to commit fraud)*,* 51(a) (alleging that Defendants extorted Plaintiff by manipulating "review pages"), 51(c) (alleging that Defendants extorted Plaintiff by "publication of facts tending to subject ICON to contempt or ridicule").  Regardless of its denomination, Plaintiff's RICO claim seeks to hold Defendants liable for traditional publishing activities, which are immune from liability under Section 230.  *See Manchanda v. Google,* 2016 WL 6806250, *3 (S.D.N.Y. 2016) (dismissing civil RICO claim under Section 230 where plaintiff's alleged damages flowed from reputational harms caused by third party content posted by search engines).  *See also Hinton v. Amazon.com.dedc, LLC*, 2014 WL 6982628, at *4 (S.D. Miss. Dec. 9, 2014) (dismissing civil claim alleging eBay violated criminal provisions of 15 U.S.C. § 2070 under Section 230); *Obado v. Magedson*, 2014 WL 3778261, at *8 (D.N.J. July 31, 2014) (dismissing civil claim that defendants engaged in criminal conspiracy under Section 230); *Doe v. Am. Online, Inc*., 783 So. 2d 1010, 1011, 1013, 1017 (Fla. 2001) (holding AOL immune under Section 230 for claims that it knowingly hosted chat rooms in which users violated federal criminal laws by distributing and selling child pornography); *Goddard v. Google, In*c., 2008 WL 5245490, at *5 n.5 (N.D. Cal. Dec. 17, 2008) (holding Google immune under Section 230 for derivative state-law civil claim seeking to hold defendant liable for criminal money laundering under 18 U.S.C. § 1957); *Backpage.com,* 817 F.3d at 29 (affirming decision that Section 230 bars civil claims under federal Trafficking Victims Protection Reauthorization Act where plaintiffs claimed the structure and operation of defendant's website facilitated illegal sex trafficking);.

Accordingly, Plaintiffs' Third Claim for Relief should be dismissed.

13

II.     **IN ADDITION TO BEING BARRED BY SECTION 230, PLAINTIFF'S COMPLAINT FAILS TO ALLEGE PLAUSIBLE CLAIMS FOR RELIEF.**

    A.     **Plaintiff's Utah Statutory Law Claims Should Be Dismissed.**

Plaintiffs First Claim for Relief—for violation of Utah's Unfair Practices Act, Unfair Competition Act, Consumer Sales Practices Act, Truth in Advertising Act—should be dismissed because Plaintiff fails to plead sufficient facts to state claims for relief that are plausible on their face.

    1.     **Plaintiff cannot state a plausible claim under the Utah Unfair Practices Act because the Act does not apply to consumers.**

Plaintiff alleges Defendants are liable under the Utah Unfair Practices Act ("UUPA") for "engaging in discrimination of price" and "obtaining exorbitant setup fees and monthly fees." Compl. ¶ 33.  Plaintiffs' reliance on the UUPA is unavailing because, while Plaintiff was a prospective (but not actual) consumer of ConsumerAffairs' services, Plaintiff does not allege that it competes with any Defendant.

The UUPA provides a mechanism for enjoining "unfair methods of *competition* in commerce or trade."  Utah Code § 13-5-2.5 (emphasis added).  But the UUPA does not apply to consumers.  "[W]e hold that the Unfair Practices Act makes unlawful *only* unfair methods of *competition*. The Act contains no language prohibiting unfair or deceptive practices in commerce…."  *Garrard v. Gateway Fin. Servs., Inc.*, 2009 UT 22, ¶ 12, 207 P.3d 1227 (affirming dismissal of consumer's claim that process server's falsification of process papers violated the UUPA) (emphasis added).  *See also Icon Health & Fitness, Inc. v. Relax-a-Cizor Prod., Inc.*, 2014 WL 29002, at *3 (D. Utah Jan. 2, 2014) (discussing *Garrard* and stating, "The Utah Supreme Court found 'the legislature intended the [UUPA] to apply only to anticompetitive behavior,' as opposed to all commercial activity.  Because the plaintiff did not compete against the process server, the court found the UUPA did not apply.") (internal citations omitted).

Because Plaintiff does not—indeed, cannot—allege that it is in competition with Defendant, Plaintiff's Complaint fails to state a claim under the UUPA.

> **2.     Plaintiff cannot state a plausible claim under the Utah Unfair Competition Act because Plaintiff's Complaint does not describe unlawful use of computing resources.**

Under the Utah Unfair Competition Act, Utah Code §§ 13-5a-101 to -103, "a person injured by unfair competition may bring a private cause of action against a person who engages in unfair competition." Utah Code § 13-5a-103(1)(a). But the Act defines "unfair competition" narrowly as an "intentional business act or practice" that falls into one of four categories: "(A) malicious cyber activity; (B) infringement of a patent, trademark, or trade name; (C) a software license violation; or (D) predatory hiring practices." Utah Code § 13-5a-102(4)(a). *See* Utah Code § 13-5a-102(3) (defining "malicious cyber activity" as "the unlawful use of computing resources to intimidate or coerce others").

Plaintiff alleges Defendants are liable under the Utah Unfair Competition because Defendants have engaged in "'malicious cyber activity' in unlawfully utilizing computer resources to intimidate ICON [and] other companies," Compl. ¶ 34(b). But Plaintiff's Complaint merely recites the elements of claim under the UUCA, and fails to support those elements with well-pleaded factual allegations. Plaintiff fails to state *how* ConsumerAffairs uses its computer resources unlawfully. Moreover, Plaintiff's allegations regarding ConsumerAffairs' deceptive and misleading conduct do not rescue its unfair competition claim because "allegedly false statements do not meet the statutory definition of 'unfair competition.'" *SCO Grp., Inc. v. Novell, Inc.*, 2007 WL 2327587, at *36 (D. Utah Aug. 10, 2007), *rev'd in part*, 578 F.3d 1201 (10th Cir. 2009).

Neither mere "'labels and conclusions'" nor "'naked assertion[s]' devoid of 'further factual enhancement'" are sufficient to comply with Rule 8. *Iqbal*, 556 U.S. at 678 (quoting

*Twombly*, 550 U.S. at 555, 557).  Because Plaintiff's Complaint does not include more than a mere allegation of unlawful use of computer resources, Plaintiff's unfair competition claim fails.

> ### 3.    Plaintiff cannot state a plausible claim under the Utah Consumer Sales Practices Act because the Act exempts publishers like ConsumerAffairs.

The Utah Consumer Sales Practices Act ("UCSPA"), Utah Code §§ 13-11-1 to -23, "generally 'prohibits deceptive or unconscionable acts or practices by a supplier in connection with a consumer transaction.'"  *Carlie v. Morgan*, 922 P.2d 1, 5–6 (Utah 1996).  Plaintiff alleges Defendants are liable under the UCSPA for the following reasons:

> (a) Under section 13-11-4, by indicating as set forth above a sponsorship, approval, performance characteristic, or other qualities of ICON products when in fact they have not such a characteristic.
>
> (b) Under section 13-11-4, by indicating as set forth above that ICON products are of a lower standard, quality, grade, style, or model, when in fact it is not.
>
> (c) Under section 13-11-4, by indicating as set forth above that Defendants have the sponsorship, approval, or affiliation with individuals, persons, and businesses that it does not have.
>
> (d) Under section 13-11-5, by engaging in as set forth above an act that violates the Utah Consumers Sales Practices Act, wherein under the circumstances such acts were unconscionable.

Compl. ¶ 35.  Plaintiff's allegations fail to state a plausible claim for violation of the UCSPA for three reasons.

First, Plaintiff's allegations are merely a recitation of some elements of a UCSPA claim, without factual support.[3]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim for relief.  *Iqbal*, 556 U.S. at 678.

---

[3] *Compare* Compl. ¶¶ 35(a) and 35(c) *with* Utah Code § 13-11-4(2)(a); Compl. ¶ 35(b) *with* Utah Code § 13-11-4(2)(b); Compl. ¶ 35(d) *with* Utah Code § 13-11-5(1).

Second, Plaintiff fails to allege a necessary element of any claim under the UCSPA—that Defendants "knowingly or intentionally" deceived Plaintiff.  *See Martinez v. Best Buy Co.*, 2012 UT App 186, ¶ 4, 283 P.3d 521 ("[T]he plain language of the UCSPA specifically identifies intentional or knowing behavior as an element of a deceptive act or practice," and "Utah courts and courts employing Utah law have consistently recognized intent as an element of a UCSPA claim."); *Rawson v. Conover*, 2001 UT 24, ¶ 36, 20 P.3d 876 (The UCSPA "requires that the supplier knowingly or intentionally deceive the consumer.").

Third, the UCSPA does not apply to ConsumerAffairs' editorial activities as a publisher of third party reviews and ratings.  By its explicit terms, the Act "does not apply to: … a publisher, broadcaster, printer, or other person engaged in the dissemination of information or the reproduction of printed or pictorial matter so far as the information or matter has been disseminated or reproduced on behalf of others without actual knowledge that it violated this act."  Utah Code § 13-11-22(1)(b).  ConsumerAffairs' activities as an online publisher of reviews and ratings submitted by consumers do not fall within the purview of the UCSPA.

4.    **Plaintiff cannot state a plausible claim under the Utah Truth in Advertising Act because the Act exempts publishers like ConsumerAffairs.**

The Utah Truth in Advertising Act ("UTAA"), Utah Code §§ 13-11a-1 to -6, states its purpose is to "to prevent deceptive, misleading, and false *advertising* practices and forms in Utah."  Utah Code § 13-11a-1 (emphasis added).  The Act defines an "advertisement" as "written, oral, or graphic statement or representation made by a supplier in connection with the solicitation of business," and excludes "any oral, in person, representation made by a sales representative to a prospective purchaser."  *Id.* § 13-11a-2(1).  Because the conduct Plaintiff alleges violates the UTAA does not constitute "advertising" as defined by the Act, Plaintiff's claim fails.  *Procter & Gamble Co. v. Haugen*, 179 F.R.D. 622, 634–35 (D. Utah 1998) (The

Act's "statement of purpose effectively imposes an overarching requirement that otherwise actionable conduct constitute advertising."), *aff'd in part, rev'd in part sub nom. Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262 (10th Cir. 2000).

The conduct of which Plaintiff complains regards ConsumerAffairs' editing, organization, and presentation of ratings and reviews submitted by consumers. This conduct cannot give rise to liability under the UTAA because ConsumerAffairs does not perform these functions "in connection with the solicitation of business." Indeed, as alleged by Plaintiff, ConsumerAffairs solicits business through telephone calls and email correspondence by its employees. *See* Compl. ¶¶ 10-13.

Moreover, by its explicit terms, the Act does not apply to "publishers, broadcasters, printers, or other persons engaged in the dissemination of information or reproduction of printed or pictorial matters who publish, broadcast, or reproduce material without knowledge of its deceptive character." Utah Code § 13-11a-5(2). ConsumerAffairs' activities as an online publisher of reviews and ratings submitted by consumers do not fall within the purview of the UTAA.

**B.**     **Plaintiff's Claim for Intentional Interference with Prospective Economic Relations Should Be Dismissed.**

Plaintiff's Second Claim for Relief states:

> Plaintiff had and has a reasonable prospective economic relationship with potential and interested consumers who have clicked and continue to click on ConsumerAffairs' review page for NordicTrack and Pro-Form, as established by Consumer's online click conversion rate track record. The Defendants and each of them, as third parties have interfered and continue to interfere with that prospective economic relationship by the improper means of misrepresentation and deception for the improper purpose of negatively impacting Plaintiffs' products as set out above.

Compl. ¶ 43.

To plead an intentional interference claim, Plaintiff must show (1) that Defendants intentionally interfered with Plaintiff's existing or potential economic relations, (2) by improper means, (3) causing injury to Plaintiff. *Eldridge v. Johndrow*, 2015 UT 21, ¶ 70, 345 P.3d 553. To establish improper means, "a plaintiff must show 'that the defendant's means of interference were contrary to statutory, regulatory, or common law or violated an established standard of a trade or profession.'" *Anderson Dev. Co. v. Tobias*, 2005 UT 36, ¶ 20, 116 P.3d 323 (quoting *Pratt v. Prodata, Inc.,* 885 P.2d 786, 787 (Utah 1994)).

Even if Section 230 immunity does not apply, Plaintiff's claim for tortious interference still fails because Plaintiff's Complaint offers only "threadbare allegations" of improper means, and such allegations are insufficient under federal pleading standards to avoid dismissal. *See Iqbal,* 556 U.S. at 678. Plaintiff alleges "there is substantial evidence that ConsumerAffairs has also intentionally not posted and removed legitimate positive reviews to specifically lower the total star rating to damage ICON." Compl. ¶ 9. But Plaintiff fails to cite to a single piece of that evidence. Plaintiff fails to identify even a single review that was not posted, or even a single review that was removed. Alleging "substantial evidence" of improper means is not the same as showing improper means, and Rule 8 requires a pleading that "shows" Plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—"that the pleader is entitled to relief.") (quoting Fed. Rule Civ. Proc. 8(a)(2)).

Moreover, "in the absence of any improper means, an improper purpose is *not* grounds for tortious interference liability." *Eldridge*, 2015 UT 21, ¶ 70 (emphasis added). Motive alone—no matter how nefarious—is an insufficient foundation for a claim of intentional interference with economic relations. Even assuming Defendants had the goals of "puff[ing] the

reputation of those companies who pay for its services" and "degrad[ing] the good will and reputation of those who do not," Compl. ¶ 21, those goals, by themselves, are not actionable in the absence of improper means.

Because Plaintiff has not sufficiently alleged conduct by any Defendant that constitutes improper means under Utah law, Plaintiff's Second Claim for Relief should be dismissed.

### C.    **Plaintiff's Defamation Claim Should Be Dismissed Because Plaintiff Fails to Identify any False Statements and because the Statements about which Plaintiff Complains Are Protected Opinion.**

Notwithstanding the immunity provided by Section 230, Plaintiff's defamation claim should be dismissed for two additional and independent reasons. First, Plaintiff fails to identify with specificity any statement that is false and defamatory. Second, the statements about which Plaintiff complains are protected opinion.

### 1.    **Plaintiff fails to identify any statement that is false and defamatory.**

To withstand a motion to dismiss, a plaintiff must set forth the statements it claims are defamatory with specificity. *Dennett v. Smith*, 445 P.2d 983, 984 (Utah 1968). *See also Majors v. Thomas Jefferson School of Law,* 2011 WL 7561516, *4 ("Pleading defamation requires specificity including what was said, to whom it was said, and when and where it was said."). Here, Plaintiff has not identified a single factual statement published by Defendants that it claims is false. Instead, Plaintiff alleges generally that Defendants posted "negative" and "biased" reviews about it, while its competitor, YOWZA Fitness, "is rated at nearly 5 stars." Compl. ¶ 20. But such generalized allegations fail to satisfy the specific requirements for pleading a defamation claim under Utah law. *See, e.g., Boisjoly v. Morton Thiokol, Inc.*, 706 F.Supp. 795, 799 (D. Utah 1988) (dismissing defamation claim for failure to plead with specificity where plaintiff alleged: "Since the date of the disaster, [defendant's] spokespersons have consistently and falsely attempted to portray Plaintiff as a disgruntled or malcontented employee whose

views should be discounted and whose professional expertise should be doubted."); *Nelson v. Target Corp.,* 334 P.3d 1010, (Utah 2014) (allegation that defendant "communicated to third persons . . . information that was untruthful and harmful to [plaintiff's] business reputation" failed to allege defamation with specificity) (ellipses in original); *Niles v. Jones,* 2004 WL 724451, *5 (D. Utah 2004) (allegation that plaintiff was "not a good employee" did not allege defamation with specificity).

The reason for requiring specificity when pleading defamation claims "is to allow the court to decide if the statement is defamatory and to allow the defendant to formulate a defense." *Boisjoly,* 706 F.Supp. at 800.  By not identifying any specific statement that it claims is false, Plaintiff attempts to evade this requirement.   Because its general claims of "bias" and "manipulation" are not capable of factual analysis or challenge, Plaintiff's defamation claim should be dismissed.

## 2.   The statements about which Plaintiff complains are protected opinion.

In addition, even if Plaintiff's defamation claim was specific and not barred by Section 230, its claim should be dismissed because it is based on matters of opinion that are not legally actionable.  Under both the First Amendment and the common law, a statement of opinion "that cannot reasonably be interpreted as stating actual facts" cannot give rise to a defamation claim. *Milkovitch v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990).  *See also West v. Thomson Newspapers,* 872 P.2d 999, 1015 (Utah 1994) (holding that the Utah Constitution, Art. I, §§ 1 & 15 protects statements of opinion).

Here, Plaintiff's defamation claim arises from the allegedly "biased, manipulated, near one-star review" on ConsumerAffairs.com, in contrast to the five-star review for YOWZA Fitness.  *See* Compl. ¶¶ 14 & 20.  But Plaintiff's star rating reflects a consumer's own evaluation of, and experience with, a company's product or service, which varies from consumer to

consumer depending on his individual experience.  Thus, a "star rating" does not constitute a provably false statement of fact, and cannot support a defamation claim.  *See*, *e.g.*, *Aviation Charter, Inc. v. Aviation Research Group/US*, 416 F.3d 864, 870 (8th Cir. 2005) (system that rated air charter service providers "on a scale of 1 [to] 10" based on safety and other data was "ultimately a subjective assessment not an objectively verifiable fact" and therefore not actionable as defamation); *ZL Technologies, Inc. v. Gartner, Inc*, 709 F. Supp. 2d 789, 796–801 (N.D. Cal. 2010) (plaintiff's ranking as a "Niche Player," was subjective opinion not objective fact and not actionable as defamation); *Browne v. Avvo Inc.* 525 F. Supp. 2d 1249, 1252 (W.D. Wash. 2007) (comparative numerical ratings for attorneys were opinions and not actionable as defamation); *Castle Rock Remodeling, LLC v. Better Business Bureau of Greater St. Louis, Inc.*, 354 S.W.3d 234, 243 (Mo. Ct. App. 2011) ("BBB's 'C' rating of [the plaintiff] is not sufficiently factual to be susceptible of being proved true or false"); *Better Business Bureau of Metropolitan Houston, Inc. v. John Moore Services, Inc.*, 2013 WL 3716693, *8 (Tex. Ct. App. 2013),  ("the 'F' rating itself cannot be defamatory because it is the Bureau's self-described 'opinion' of the quality of [the plaintiff's] services, which lacks a high degree of verifiability"); *Themed Restaurants, Inc. v. Zagat Survey, LLC,* 21 A.D.3d 826, 827 (N.Y. App. Div. 2005) (numerical survey that rated restaurants based on summary of contributions from individual consumers was constitutionally protected opinion).

Tellingly, despite Plaintiff's conclusory allegation that "ConsumerAffairs has also intentionally not posted and removed legitimate positive reviews to specifically lower the total star rating to damage ICON and other nonpaying companies," Compl. ¶ 9, Plaintiff does not challenge the numerical accuracy of its star rating on ConsumerAffairs.com.  Rather, Plaintiff challenges the accuracy of the star rating of its competitor, YOWZA.  *See, e.g., id.* ¶ 20 (alleging

that YOWZA is the only computer in the category of "Fitness Equipment" with five stars).  But clearly the accuracy of YOWZA's star rating does not impact the accuracy of Plaintiff's star rating.  Put a different way, Plaintiff does not identify any inaccuracy in the numerical summary of the star ratings submitted by consumers of its products.  Because that summary is a subjective assessment and not an objective fact, as the above authorities make clear, it cannot be the subject of a defamation claim.  Therefore, on this separate ground, Plaintiff's defamation claim should be dismissed.

### D.  Plaintiff's RICO Claim Should Be Dismissed Because Plaintiff's Complaint Fails to Plead Essential Elements of a RICO Claim.

To meet its burden of demonstrating a plausible RICO claim under 18 U.S.C. § 1962(c), Plaintiff must show:  (1) conduct by Defendants, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity, (5) causing injury to its business.  *CGC Holding Co., LLC v. Broad and Cassel,* 773 F.3d 1076, 1088 (10th Cir. 2014).  In addition, because Plaintiff's RICO claim involves allegations of fraud, *see* Compl. ¶ 50 (alleging wire fraud and extortion), those allegations must be pled with particularity under Rule 9(b) of the Federal Rules of Civil Procedure, and must "'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" *Koch v. Koch Industries, Inc.,* 203 F.3d 1202, 1236 (10th Cir. 2000) (*quoting Lawrence Nat'l Bank v. Edmonds,* 924 F.2d 176, 180 (10th Cir. 1991)).  *See also Farlow v. Peat, Marwick, Mitchell & Co.,* 956 F.2d 982, 989 (10th Cir. 1992) ("Under Rule 9(b), plaintiffs must sufficiently allege each element of a RICO violation and its predicate acts of racketeering with particularity, a requirement justified by the "threat of treble damages and injury to reputation'") (citation omitted).  Rule 9(b) "does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant ... and

inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir.2007) (quotation omitted).

Here, notwithstanding the immunity provided by Section 230, Plaintiff's RICO claim should be dismissed for four additional and independent reasons: (1) Plaintiff's Complaint does not show Defendants conducted a RICO enterprise; (2) Plaintiff's Complaint does not show a "pattern" of racketeering activity; (3) Plaintiff's Complaint does not show Defendants engaged in any racketeering activity; and (4) Plaintiff's Complaint does not show Defendants proximately caused Plaintiff any harm.

### 1. Plaintiff's Complaint does not show Defendants conducted a RICO enterprise.

RICO liability does not exist unless each defendant has participated in the operation or management of the enterprise itself. *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993). To participate in a RICO enterprise, a defendant must have some part in directing the affairs of the enterprise. *Tal v. Hogan,* 453 F.3d 1244, 1269 (9th Cir. 1993). Moreover, to state a RICO claim for fraud involving multiple defendants, a plaintiff must allege facts showing that *each* of the defendants conducted or participated in an enterprise through a pattern of racketeering activity. *See, e.g., Cook v. Zions First Nat. Bank,* 645 F.Supp. 423 (D. Utah 1986) (requirement that fraud be pleaded with particularity "is especially important in cases involving multiple defendants . . . since each defendant is entitled to know precisely what it is the plaintiff claims he did wrong."); *Flores v. Emerich & Fike*, 416 F. Supp. 2d 885, 911 (E.D. Cal. 2006) (conclusory allegations that defendants "engaged in a laundry-list of purported predicate acts" insufficient to establish RICO claim). As a leading RICO treatise has noted, in complaints that allege the participation of multiple defendants in the operation or management of an enterprise:

> Complaints frequently cast a broad net, naming unaffiliated defendants who are not factually alleged to have participated

> meaningfully in directing the enterprise's affairs.   Conclusory,
> boilerplate allegations do not determine whether a defendant is
> properly named as a participant in an enterprise, much less whether
> the defendant operated or managed the enterprise.   The complaint
> must contain factual allegations that each defendant was actually
> involved in directing the affairs of the enterprise; otherwise
> dismissal is appropriate.

Gregory P. Joseph, *Civil RICO* § 9C (2d ed. 2000).

Here, Plaintiff alleges generally that "Defendants" have engaged in racketeering activities, but does not specify any particular action by any specific Defendant to support its claims.  Notably, none of the paragraphs in the complaint identify *which* of the Defendants took *which* actions or made *which* statements on *which date* that proximately caused damages to Plaintiff.  *See Seattle-First Nat. Bank v. Carlstedt,* 800 F.2d 1008, 1011 (10th Cir. 1986) (Rule 9(b) requires plaintiff to identify the specific Defendant with whom he dealt directly, the occasions on which allegedly fraudulent statements were made, and by whom).   Plaintiff's generic pleading does not satisfy his burden of establishing this element of its RICO claim. Therefore, on this ground, Plaintiff's RICO claim should be dismissed.

### 2.    Plaintiff's Complaint does not show a "pattern" of racketeering activity.

In order to demonstrate a plausible RICO claim, Plaintiff must show a "pattern" of racketeering activity.  *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).  A pattern of racketeering requires more than "one scheme, one result, one set of participants, one victim, [and] one method of commission."  *Condict v. Condict,* 826 F.2d 923, 928 (10th Cir. 1987). Here, Plaintiff essentially complains of a single scheme allegedly used to coerce it to sign a contract to become an accredited member of ConsumerAffairs.  *See* Compl. ¶ 36 (alleging that Defendants engaged in wire fraud and extortion in order to compel Plaintiff to pay money to become an accredited member).   This is insufficient to demonstrate a pattern of racketeering

activity.  *See Bixler v. Foster,* 596 F.3d 751, 761 (10th Cir. 2010) (affirming dismissal of RICO claim where plaintiffs alleged a single scheme to transfer assets to another corporation); *Duran v. Carris,* 238 F.3d 1268, 1271 (10th Cir. 2001) (affirming dismissal of RICO claim where plaintiff alleged a series of acts designed to accomplish the single goal to obtain approval of a property development); *Torwest DBC, Inc. v. Dick,* 810 F.2d 925, 928-29 (affirming dismissal of RICO claim where defendants' alleged fraudulent activities had the single goal of inducing plaintiff to enter into an acquisition agreement).

Moreover, Plaintiff does not identify any other "victim" or any continuing injuries from Defendants' scheme, which is also fatal to its claim.  *See Condict,* 826 F.2d at 928-929 (alleged multiple illegal acts to defraud single victim failed to set forth claim for RICO violation); *Thompson v. Wyoming Alaska, Inc.,* 652 F.Supp. 1222, 1227 (D. Utah 1987) (dismissing RICO claim where, among other deficiencies, plaintiff did not allege independent harms to other victims); *Buena Vista, LLC v. New Resource Bank,* 2011 WL 250361, *3 (N.D. Cal. 2011) (dismissing RICO claim where plaintiff did not identify other victims or threatened victims of alleged scheme).  Plaintiff's RICO claim should be dismissed on this ground as well.

### 3.   Plaintiff's Complaint does not show Defendants engaged in any racketeering activity.

Finally, Plaintiff's RICO claim should also be dismissed because Plaintiff's Complaint does not show the required predicate acts of either wire fraud or extortion.  *See Tal,* 453 F.3d at 1261-62, 1267 (to demonstrate "racketeering activity" under RICO plaintiff must establish certain "predicate acts" that are indictable under state or federal law).

### a.   Wire fraud.

The essential elements of wire fraud are (1) the formation of a scheme to defraud; (2) use of the U.S. wires to further the scheme; and (3) specific intent to defraud.  *Schreiber Distributing*

*Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1400 (9th Cir. 1986).  Moreover, a plaintiff

must set forth "what is false or misleading about [an allegedly fraudulent] statement, and why it

is false."  *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  *See also Lorenz*

*v. Deutsche National Trust Co.*, 2015 WL 5813174, *5 (dismissing plaintiff's RICO claims

where plaintiff failed to identify "who, what, when, where, and how of the [alleged] misconduct"

as well as what was false or misleading about allegedly fraudulent statement and why) (citation

and internal quotation marks omitted).

Here, as noted above, not only does Plaintiff fail to specify how each Defendant was

involved in the fraudulent conduct at issue, Plaintiff does not allege that any statements made to

it by ConsumerAffairs were false.  Indeed, Plaintiff claims that it refused to enter into a contract

with ConsumerAffairs because "it did not believe the coercive practices of ConsumerAffairs

were just."  Compl. ¶ 12.  Thus, Plaintiff cannot demonstrate Defendants' specific intention to

defraud or deceive it.  *See Sanville v. Bank of American Nat. Trust & Savings Ass'n*, 18 Fed.

Appx. 500, (9th Cir. 2001) (affirming dismissal of RICO claim where plaintiff failed to describe

scheme in which defendants targeted deceptions "specifically and intentionally" at it).  On this

basis, its RICO claim should be dismissed.

### b.    Extortion.

Under Utah law, the crime of "theft by extortion" consists of obtaining or exercising

"control over the property of another by extortion and with a purpose to deprive him thereof."

U.C.A. § 76-6-406.  In general, however, using threats of economic harm to obtain property is

not considered extortion where the alleged extortioner has a legitimate claim to the property.

*United States v. Enmons,* 410 U.S. 396, 400 (1973).  *See also Schneider v. National*

*Organization for Women,* 123 S. Ct. 1057, 1068 (2003) (extortionate act under RICO requires

alleged wrongful use of force, fear, or other conduct to obtain something of value).  Thus,

threatening economic harm to induce a person to pay for a legitimate service is not extortion. *See Levitt*, 765 F.3d 1123, 1133 (9th Cir. 2014).  In *Levitt*, the Ninth Circuit rejected plaintiff's claim that defendant Yelp had committed extortion by allegedly threatening to post negative reviews of businesses, remove positive reviews, and change the order of reviews if business owners refused to purchase advertising.  *Id.* at 1133.  Even if plaintiffs' allegations were true, the court held, plaintiffs had no pre-existing right to have positive reviews appear on Yelp's website, nor were the services offered by Yelp worthless.  765 F.3d at 1133.  *See also Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 939-940 (9th Cir. 2006) (rejecting plaintiff's claim that defendants' settlement demands threatening costly lawsuits constituted "extortion" under the law).

Here, while Plaintiff claims Defendants committed extortion by manipulating (and threatening to manipulate) the posting of reviews on the ConsumerAffairs' website, Compl. ¶ 36(b), Plaintiff has no pre-existing right to the publication of positive reviews or the removal of negative reviews from the website.  *See Levitt*, 765 F.3d at 1134 (Yelp was not liable for extortion where it was not "independently wrongful for Yelp to post and arrange actual user reviews on its website as it sees fit").  Thus, while Defendants might be accused of "hard bargaining," their conduct does not constitute actionable extortion under the law.  *Id.*

### 4. Plaintiff's Complaint does not show Defendants proximately caused Plaintiff any harm.

Plaintiff has failed to demonstrate that its alleged injuries were proximately caused by Defendants' actions.  The law is clear that when a plaintiff's alleged injuries do not flow directly from the alleged RICO violation, plaintiff may not assert a RICO claim.  *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010).  *See also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006) (holding that plaintiff could not maintain a RICO claim where defendant's alleged fraudulent statements were made to the New York tax authority and not to plaintiff, even though

plaintiff claimed it was injured by the lower prices charged by defendant as a result of its fraud); *Wood v. World Wide Ass'n of Specialty Programs,* 2011 WL 3328931, *4 (D. Utah 2011) (dismissing RICO claim where "none of the Plaintiffs has attempted to allege or argue how he or she in particular was so harmed."). Here, Plaintiff's alleged damages are not only entirely speculative, they are nonsensical.

Plaintiff claims that it has been damaged in the amount of no less than $10,530,000.00 based on its estimate that "a total of 9,000 unique views for NordicTrack and 4,500 unique views for Pro-Form take place each month on ConsumerAffairs' website," Compl. ¶ 30, and "ConsumerAffairs' click-to-conversion rate for each unique page view equates to 1,800 lost NordicTrack customers, and 900 lost Pro-Form customers, each month." *Id.* But Plaintiff provides no basis for its estimate of page views, and its "click-to-conversion rate" is unsupported. Moreover, Plaintiff provides no basis for how it calculates that 2,700 lost customers each month yields more than ten million dollars of damages in a year. This type of speculative and unsubstantiated damage claims fails to set forth a claim under RICO. *See, e.g., Sybersound Records, Inc.,* 517 F.3d 1137 (9th Cir. 2008) (dismissing RICO claim where ascertaining damages would require "a speculative and complicated analysis to determine what percentage of [plaintiff's] decreased sales, if any, were attributable to" the claimed violation rather than to other, legitimate, causes). For this separate reason, therefore, Plaintiff's RICO claim should be dismissed.

## III.   PLAINTIFF'S CLAIMS AGAINST DEFENDANTS CARMAN AND CONSUMERS UNIFIED SHOULD BE DISMISSED.

Under Rule 8(a)(2) of the Federal Rules of civil Procedure, a complaint must give the defendant "fair notice" of plaintiff's claims "and the grounds upon which it rests." *Burnett v. Mortgage Electronic Registration Systems, Inc.,* 706 F.3d 1231, 1235 (10th Cir. 2013) (citations

omitted).   The Supreme Court in *Twombly* "was particularly critical of complaints that 'mentioned no specific time, place, or person involved in the alleged conspiracies.'" *Robbins v. Oklahoma,* 519 F.3d 1242, 1248 (10th Cir. 2008) (*quoting Twombly,* 127 S. Ct. at 1971, n.10). Here, Plaintiff has not alleged any specific facts sufficient to withstand its burden of pleading Consumers Unified's or Carman's specific involvement in the actions about which Plaintiff complains.

Except for identifying Consumers Unified as a Nevada limited liability company, Plaintiff's sole allegation against Consumers Unified is that it is listed as the contracting party on ConsumerAffairs' Accreditation Agreement.  Compl. ¶¶ 3 & 23.  This allegation is insufficient to give Consumers Unified notice of the basis for the claims against it.  Plaintiff fails to identify any alleged tortious act committed by Consumers Unified, any defamatory statement made by Consumers Unified, or any activity at all conducted by Consumers Unified.  Indeed, given that Plaintiff did *not* sign the Accreditation Agreement, Compl. ¶ 25, it is unclear what role Plaintiff contends Consumers Unified played in the actions that allegedly injured it.  For this independent reason, all claims against Consumers Unified should be dismissed.

The allegations against Carman are equally deficient.  Aside from alleging Carman's corporate positions, and the fact that he "uses" Consumers Unified to contract with accredited members, Plaintiff's only allegation against Carman is that, "on information and belief" he introduced a "new business model . . . selling memberships to brands like ICON to 'transform' their review images." *Id.* ¶ 24; *see also id.* ¶ 3.  But even if Carman were the inventor of this "new business model," the allegation fails to specify what role Carman allegedly played in the injuries Plaintiff claims to have suffered—or whether he played any role at all other than introducing "a new business model."  Moreover, it is a principle of black letter law that the

corporate form protects shareholders and officers from liability. *N.L.R.B. v. Greater Kansas City Roofing,* 2 F.3d 1047, 1051-52 (10th Cir. 1993 (citations omitted). A corporate officer is not liable for fraudulent acts "that were committed by other agents of the corporation or by the corporation itself." *Armed Forces Ins. Exch. V. Harrison,* 70 P.3d 35, 41 (Utah 2003). Here, Plaintiff fails to plead any facts sufficient to establish Defendant Carman's individual liability for any of the claims it asserts against him. Thus, all of Plaintiff's claims against Carman should be dismissed. *See Armed Forces,* 70 P.3d at 41 (dismissing claim against corporate officer where only allegation was that he oversaw the business activities of the corporation).

## CONCLUSION

Defendants request that the Court dismiss Plaintiff's First, Second, Third, and Fourth Claims for Relief with prejudice because (1) each claim for relief is barred by Section 230 of the Communications Decency Act; and (2) Plaintiff's Complaint fails to plead sufficient facts to make Plaintiff's claims for relief plausible on their face. Independent of the Court's decision regarding dismissal of Plaintiff's claims, Defendants request that the Court dismiss David Zachary Carman and Consumers Unified, LLC as parties because Plaintiff has failed to plead any cognizable claim against those two Defendants.

RESPECTFULLY SUBMITTED this 20th day of December, 2016.

/s/ Richard E. Mrazik _____
Randy L. Dryer
Richard E. Mrazik
PARSONS BEHLE & LATIMER
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of December, 2016, I caused the foregoing

**MOTION TO DISMISS PLAINTIFF'S CLAIMS WITH PREJUDICE** to be filed

electronically with the Clerk of the Court using the CM/ECF system, which sent notification of

the filing to counsel of record, as follows:

Brad H. Bearnson
Wayne K. Caldwell
Aaron K. Bergman
BEARNSON & CALDWELL. LLC
399 North Main, Suite 270
Logan, Utah 84321
Telephone: (435)752-6300
Facsimile: (435)752-6301
bbearnson@bearnsonlaw.com
wcaldwell@bearnsonlaw.com
abergman@bearnsonlaw.com
mandreasen@bearnsonlaw.com

_/s/ Richard E. Mrazik_____