# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| **ICON HEALTH & FITNESS, INC., a Delaware corporation,**<br><br>  **Plaintiff,**<br><br>**v.**<br><br>**CONSUMER AFFAIRS.COM, a Nevada corporation, CONSUMERS UNIFIED, LLC, a Nevada limited liability company; and DAVID ZACHARY CARMAN, and individual,**<br><br>  **Defendants.** | **MEMORANDUM DECISION**<br><br>**Case No. 1:16-cv-00168-DBP**<br><br>**Magistrate Judge Dustin B. Pead** |

## BACKGROUND

Plaintiff's Complaint alleges ConsumerAffairs.com ("ConsumerAffairs"), Consumers Unified, LLC, and David Zachary Carman[1] (collectively "Defendants") violated the Racketeering Influenced Corrupt Organizations Act ("RICO"), violated Utah statutes, interfered with prospective economic relations, and defamed Plaintiff. (ECF No. 2, Ex. 1.) Defendants, through ConsumerAffairs, maintain an internet database of product reviews, which includes reviews of products Plaintiff produces. Plaintiff alleges Defendants' internet site improperly favors paying member companies while unfairly disparaging nonmember companies. (*See id.*) The matter is presently before the court on Defendants' Motion to Dismiss. (ECF No. 10.) Defendants argue they are entitled to statutory immunity under the Communications Decency Act and that Plaintiff fails to properly allege any viable claim. For the reasons set forth below the court will grant Defendants motion, in part.

---

[1] Defendants claim Plaintiff misidentifies David Zachariah Carman. (ECF No. 10 at 1.)

## STANDARD OF REVIEW

To survive, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court accepts factual allegations "as true and construe[s] those allegations, and any reasonable inferences that might be drawn from them" in a plaintiff's favor. *Gaines v. Stenseng*, 292 F.3d 1222, 1224 (10th Cir. 2002). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nonetheless, conclusory allegations without supporting factual allegations are insufficient to state a claim for relief. *See id.* ("Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'").

## FACTS

Plaintiff alleges the following facts. ConsumerAffairs hosts a website containing product reviews and complaints for a wide variety of consumer products, including certain exercise equipment Plaintiff manufactures. (ECF No. 2, Ex. 1 at 3–4.) Defendant Carman is the sole manager of Consumers Unified, LLC, and the President, sole Director, Secretary, and Treasurer of ConsumerAffairs. (*Id.* at 3.) Together, Defendants maintain a database of product reviews on the ConsumerAffairs website. Defendants, through that database, favor product manufacturers who agree to pay a one-time setup fee and an ongoing monthly fee to ConsumerAffairs or Consumers Unified, LLC.[2] (*Id.* at 4–7, 11.)

ConsumerAffairs publishes an "Overall Satisfaction Rating" for each product reviewed on its website. (*Id.* at 4.) The Overall Satisfaction Rating is expressed as a star rating out of five possible stars. ConsumerAffairs calculates the rating based on an unspecified subset of user

---

[2] Plaintiff alleges it received a proposed contract that identified the contracting party as Consumers Unified, but also referred to that entity as ConsumerAffairs. (*See id.* at 11.)

reviews hosted on ConsumerAffairs' website. (*Id.* at 4.) ConsumerAffairs' chooses which consumer reviews to include in given company's Overall Satisfaction Rating based solely on whether that company pays a monthly fee to ConsumerAffairs. (*Id.* at 5.) ConsumerAffairs alters a company's Overall Satisfaction Rating by intentionally omitting or removing legitimate positive consumer-submitted reviews from pages discussing non-paying companies. (*Id.* at 6.)

ConsumerAffairs contacted Plaintiff in early 2016 offering to "help" Plaintiff with their business. (*Id.*) At that time, ConsumerAffairs rated two of Plaintiff's products at approximately one star out of five. (*Id.* at 7.) ConsumerAffairs initially refused to share pricing information unless Plaintiff signed a non-disclosure agreement. ConsumerAffairs relented when Plaintiff pointed out that pricing should not constitute a trade secret. (*Id.* at 6–7.) ConsumerAffairs sent Plaintiff a Member Accreditation Agreement ("Agreement").  ConsumerAffairs offered to waive a customary $9,000 setup fee and charge Plaintiff an ongoing $3,000 monthly fee in return for certain benefits and services. (*Id.* at 7.)

The Agreement provides that ConsumerAffairs will remove all negative feedback Plaintiff disputes if: the underlying facts are uncertain, the problem is "resolved," a consumer does not respond within five days, or the customer's response is "insufficient." (*Id.*) If Plaintiff refused to pay, Plaintiff could not challenge any negative feedback related to its products. (*Id.*) Also, ConsumerAffairs allows paying companies to request or compel[3] individual reviewers to change a prior rating, but a nonpaying company cannot do this. (*Id.* at 5.)

Once a company begins paying ConsumerAffairs, the company's product pages on ConsumerAffairs' website change. (*Id.* at 4–5.) Prior to paying, ConsumerAffairs superimposes on a given company's page a prompt stating "Not Impressed With [non-paying brand]? Find a

---

[3] The Complaint is unclear. It states that companies who contract with ConsumerAffairs "can have reviewers update a star rating, [and] have a star rating removed . . . ." (*Id.* at 5.)

company you can trust" or other language recommending competitors. (*Id.* at 5.) Also, ConsumerAffairs subtly switches the order of wording on a company's page from the non-paying version that states "Top [number] Complaints and Reviews" to the paying version, "Top [number] Reviews and Complaints." (*Id.* at 4.)

## ANALYSIS

### I.  Communications Decency Act immunity

#### a.  Parties' Arguments

Defendants argue the court should dismiss the Complaint because the Communications Decency Act ("CDA") provides immunity to Defendants for all conduct alleged in the Complaint. Plaintiff contends that Defendants are not entitled to CDA immunity because ConsumerAffairs is a content provider as defined by the CDA, not simply a publisher of third-party submissions. Plaintiff also contends that CDA immunity does not extend to RICO claims.

#### b.  The CDA applies to ConsumerAffairs' publication of third-party reviews

The CDA provides immunity to ConsumerAffairs for some, but not all, conduct alleged in the Complaint. The CDA provides, in pertinent part: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Further, "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." *Id.* § 230(e)(3). Thus, the CDA provides immunity for civil causes of action based on information originating with a third party. *Ben Ezra, Weinstein, & Co., Inc. v. Am. Online Inc.*, 206 F.3d 980, 984–85 (10th Cir. 2000). Yet "the CDA provides immunity only from liability, not suit." *Gen. Steel Domestic Sales, L.L.C. v. Chumley*, 840 F.3d 1178, 1181 (10th Cir. 2016). Defendants must satisfy three requirements to take advantage of CDA immunity: Defendants (1) were providers or users of "an interactive computer service," (2) Defendants

undertook the actions alleged in the Complaint as a publisher or speaker and, (3) another "information content provider" provided the information at issue. *See F.T.C. v. Accusearch Inc.*, 570 F.3d 1187, 1196 (10th Cir. 2009).

### 1. *Interactive computer service*

"The term 'interactive computer service' means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C.A. § 230(f)(2). Generally, a website constitutes an interactive computer service. *See Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 419 (1st Cir. 2007), *cited with approval in Accusearch*. Plaintiff alleges that Defendants operate the ConsumerAffairs website. (*E.g.*, ECF No. 2, Ex. 1 at 4.) Plaintiff offers no authority to suggest ConsumerAffairs is not an interactive computer service.[4] Thus, the court finds Defendants are providers or users of an interactive computer service to the extent they operate the ConsumerAffairs website.

### 2. *Speaker or publisher*

The Tenth Circuit held that CDA immunity protects an interactive computer service in the "exercise of its editorial and self-regulatory functions." *Ben Ezra, Weinstein, & Co., Inc. v. Am. Online Inc.*, 206 F.3d 980, 986 (10th Cir. 2000) (finding that an interactive computer service engaged in editorial functions when it deleted allegedly inaccurate information from a website). The editorial role also includes "deciding whether to publish, withdraw, postpone or alter content" *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997), *cited with approval in Ben Ezra, Accusearch, and Gen. Steel*. The *Zeran* court noted that an "important purpose of § 230

---

[4] Plaintiff's brief could be read to argue that only internet service providers are entitled to CDA immunity, but Plaintiff does not offer any authority to support such a position.

was to encourage service providers to self-regulate the dissemination of offensive material over

their services." *Id.* at 331. Accordingly, the court does not question the motives of the editor. *See*

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1170–71

(9th Cir. 2008) ("any activity that can be boiled down to deciding whether to exclude material

that third parties seek to post online is perforce immune under section 230"). Defendants argue

Plaintiff's allegations describe only actions of a publisher. The court partially agrees with

Defendants. The Complaint refers to a number of activities Defendants undertake as a publisher

of third-party information. For example, the Complaint alleges "ConsumerAffairs hosts web-

based product or brand reviews." (ECF No. 2, Ex. 1 at 4.) In doing so, ConsumerAffairs has

deliberately not posted, or even removed, positive reviews. (*Id.* at 6.) ConsumerAffairs also posts

certain reviews "out of chronological order." (*Id.* at 9.) These activities fall within the traditional

publisher's role. Plaintiff suggests these actions are taken with malicious intent. (*E.g. id.* at 6.)

Yet the provision of the CDA on which Defendants rely contains no good-faith requirement. *See*

47 U.S.C. § 230(c)(1). This omission appears intentional because the following subsection

contains a good-faith requirement. *See id.* § 230(c)(2) (prohibiting liability for "any action

voluntarily taken in good faith"). Additionally, other courts have rejected similar attempts to find

a bad-faith exception to CDA immunity. *See Levitt v. Yelp! Inc.*, No. 10-1321, 2011 WL

5079526, at *7–8 (N.D. Cal. Oct. 26, 2011), *aff'd*, 765 F.3d 1123 (9th Cir. 2014). The court finds

the *Levitt* court's reasoning persuasive:

> [T]raditional editorial functions often include subjective judgments informed by
> political and financial considerations. Determining what motives are permissible
> and what are not could prove problematic. Indeed, from a policy perspective,
> permitting litigation and scrutiny [of] motive could result in the "death by ten
> thousand duck-bites" against which the Ninth Circuit cautioned in interpreting §
> 230(c)(1).

*Id.* (citations omitted).

On the other hand, Plaintiff also alleges that Defendants engage in conduct beyond editorial and self-regulatory functions related to speech and publication of third-party information. Plaintiff alleges that Defendants began soliciting Plaintiff via email about purchasing advertising from ConsumerAffairs. (*Id.* at 6.) At least one court determined similar conduct fell outside CDA immunity. The District of Massachusetts held that an online "consumer advocacy forum" called RipoffReport.com did not qualify for CDA immunity for advertising mediation services to the subjects of consumer complaints. *See Small Justice LLC v. Xcentric Ventures LLC*, 99 F. Supp. 3d 190, 200 (D. Mass. 2015), *amended,* No. 13-CV-11701, 2015 WL 5737135 (D. Mass. Sept. 30, 2015). The court agrees. While a website provider enjoys CDA immunity for certain information posted on its website, it may engage in other related conduct for which the CDA offers no immunity. Thus, while much of Defendants' conducted alleged in the complaint constitutes third-party speech or publication, other conduct does not. Consistent with the CDA, Defendants will not be treated as publisher or speaker of any third-party information on the website. Nonetheless, the court will examine whether Defendants must defend any portion of the Complaint related to conduct not immunized by the CDA.

### 3. *Information originating with another information content provider*

Plaintiff alleges facts that show Defendants develop at least some of the offensive content at issue in the Complaint. An interactive service provider "is 'responsible' for the development of offensive content only if it in some way specifically encourages development of what is offensive about the content." *Accusearch* at 1187. The Ninth Circuit, sitting en banc, discussed the thin line between content development and exercise of editorial and self-regulatory functions:

> A website operator who edits user-created content—such as by correcting spelling, removing obscenity or trimming for length—retains his immunity for

> any illegality in the user-created content, provided that the edits are unrelated to the illegality. However, a website operator who edits in a manner that contributes to the alleged illegality—such as by removing the word "not" from a user's message reading "[Name] did *not* steal the artwork" in order to transform an innocent message into a libelous one—is directly involved in the alleged illegality and thus not immune.

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1169 (9th Cir. 2008) This element overlaps to a great degree with the question of whether ConsumerAffairs exercised its editorial and self-regulatory function, but the focus is on whether ConsumerAffairs created any of the purportedly-harmful content.

The court easily concludes that ConsumerAffairs developed or created the content that originates with ConsumerAffairs rather than any user. For example, Plaintiff alleges that ConsumerAffairs superimposes on product pages: "Not Impressed With [non-paying brand]? Find a company you can trust." (ECF No. 2, Ex. 1 at 5.) Similarly, the Complaint alleges ConsumerAffairs modifies review pages and search engine results for paying members by changing the order of certain words depending on whether a company has paid ConsumerAffairs. (*Id.* at 4.) ConsumerAffairs allegedly undertook this action independent of any user review. Thus, Defendants are not entitled to CDA immunity for this conduct.

On the other hand, the court concludes ConsumerAffairs does not create or develop the Overall Satisfaction Rating expressed as rating out of five possible stars. (*See* ECF No. 2, Ex. 1 at 4.) Plaintiff attempts to transform this rating into a product of ConsumerAffairs' creation by alleging that ConsumerAffairs purposely removes positive reviews to punish nonpaying companies by lowering their Overall Satisfaction Rating. This alleged manipulation relates to editorial and self-regulatory functions because it involves ConsumerAffairs' decision to remove a review. (*See supra* Part I.b.2.) Accordingly, the court concludes ConsumerAffairs does not

create or develop the star rating. Additionally, the court concludes that this rating constitutes a protected opinion, regardless of who created or developed it. *See infra* Part III.b.3.

Based on the foregoing, Defendants enjoy immunity for some, but not all alleged conduct. The court does not endeavor to delineate the full extent of Defendants' actions taken as a content developer here. Instead, the court merely notes that the Complaint alleges sufficient facts to show that at least some of the content is developed by Defendants and some of its actions were taken in a role other than a content publisher. Thus, Defendants are not immune under the CDA for all activities here. The court will revisit CDA immunity as it examines Plaintiff's remaining claims.

### c. CDA Immunity applies to civil RICO claim

The court rejects Plaintiff's argument that the CDA does not immunize RICO violations. Plaintiff first cites to a portion of the CDA that states the Act must not "be construed to impair the enforcement of . . . any other Federal criminal statute." 47 U.S.C. § 230(e)(1). Plaintiff appears to believe this language exempts its civil RICO claim from application of the CDA. Yet the explicit statutory language of this exception precludes application of the CDA to federal *criminal* cases. It has no effect on civil matters.

Next, Plaintiff cites to the CDA provision that explicitly applies its immunity to claims under "State or local law." *Id.* § 230(e)(3). Plaintiff appears to make a negative inference that claims under federal law survive. The court disagrees. The provision cited merely clarifies that the CDA preempts contrary state and local law; it does not in any way diminish application of the CDA's operative language to federal civil claims. Accordingly, even with respect to Plaintiff's RICO claims: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. §

230(c)(1). Thus, while the CDA does not preclude RICO claims entirely, it does preclude civil RICO liability predicated on a defendant publishing third-party information.

## II. Utah statutory claims

### a. Utah Unfair Practices Act claim

Plaintiff's Utah Unfair Practices Act ("UUPA") claim must be dismissed because Plaintiff does not allege facts to suggest it is a competitor of ConsumerAffairs. UUPA outlaws certain unfair methods of competition, including anticompetitive discriminatory pricing as well as advertising goods a retailer is not prepared to supply. *Garrard v. Gateway Fin. Servs., Inc.*, 207 P.3d 1227, 1229 (Utah 2009). In *Garrard*, the Utah Supreme Court held that UUPA applies only to claims of unfair competition brought by commercial competitors. *Id.* at 1230–31. The court held that the Act does not apply to consumers. *Id.* at 1231. Here, Plaintiff only alleges it is ConsumerAffairs' potential consumer. Accordingly, the claim is barred by *Garrard*.

Plaintiff attempts to salvage this claim by arguing ConsumerAffairs discriminates between paying and nonpaying customers. Plaintiff misunderstands UUPA and makes an untenable argument. As discussed, UUPA prohibits sellers from offering discriminatory pricing in a manner that impairs competition. Even to the extent a potential customer like Plaintiff could bring an action, Plaintiff alleges no facts to suggest Defendants engaged in pricing that impairs free-market competition. Further, UUPA does not prohibit discrimination between paying customers and nonpaying customers. Presumably this is a relief to Plaintiff who need not deliver its products to customers who do not agree to pay.

### b. Utah Unfair Competition Act claim

Defendants argue Plaintiff's Utah Unfair Competition claim should be dismissed because Plaintiff has not shown that Defendants unlawfully deployed computer assets to intimidate or coerce Plaintiff. The Utah Unfair Competition Act allows a private right of action to a person

injured by another engaging in "unfair competition." Utah Code Ann. § 13-5a-103(1)(a). Unfair competition is defined, in part, as "malicious cyber activity" which is defined as "unlawful use of computing resources to intimidate or coerce others." *Id.* §§ 13-5a-102(3) &102(4)(a).

Plaintiff argues it properly pled this claim because it alleges Defendants attempted to coerce Plaintiff to enter the Member Accreditation Agreement. Defendants argue in reply that Plaintiff has not properly pled extortion. The court disagrees. Plaintiff has adequately pled a claim of extortion under state law. The Utah Code defines extortion, in part, as: "any other act which would not in itself substantially benefit [the defendant] but which would harm substantially any other person with respect to that person's health, safety, business, calling, career, financial condition, reputation, or personal relationships." Utah Code Ann. § 76-6-406(i). Defendants do not describe any legitimate benefit they receive for refusing to take down inaccurate reviews, or reviews based on matters already resolved. Plaintiff, on the other hand, alleges its business suffers substantial harm from Defendants refusal. Defendants do not appear to argue their conduct lies outside the ambit of this provision of the Utah Code. Accordingly, the court will deny Defendants' motion as far is it concerns Plaintiff's Utah Unfair Competition Act claim.

At first blush, the court's discussion may appear to suggest Defendants should be held liable for third-party speech. The CDA precludes such liability and the court will not impose it. Nonetheless, a party may be liable for extortion by economic fear if that party offers to influence a third party to take a certain action. In *United States v. Lotspeich* the Tenth Circuit affirmed a defendant's extortion conviction for offering to influence a county commission to grant a certain license if the victim paid the defendant $2,300,000. 796 F.2d 1268, 1269, 1273 (10th Cir. 1986). The defendant was convicted for his veiled threats that a license would not be issued unless the victim hired defendant to influence the commission to grant the license. The Tenth Circuit

affirmed the conviction even though the defendant not cause, or threaten to cause, harm to the victim. Here, Plaintiff alleges ConsumerAffairs offered to influence individuals posting reviews if Plaintiff agreed to pay ConsumerAffairs an annual fee. Such influence peddling may constitute extortion regardless of whether Defendants are responsible for the initial harmful conduct. Thus, Defendants may be held liable for extortion without being treated as the publisher of any review.

### c. Utah Consumer Sales Practices Act claim

Plaintiff must provide a more definite statement of its Utah Consumer Sales Practices Act ("UCSPA") claim. The court may order a more definite statement in a complaint "so vague or ambiguous that [Defendants] cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Although styled as a motion to dismiss, this portion of Defendants' motion primarily attacks the lack of detail in the Complaint. Thus, the court will treat the motion as one for more definite statement. In addition to the lack of detail in the complaint, Plaintiff's Opposition further confuses matters because it is inconsistent with the Complaint. For example, Plaintiff's Complaint alleges Defendants made improper representations about Plaintiff's products. Yet Plaintiff's Opposition shifts direction. Plaintiff claims in its Opposition that Defendants misrepresented Defendants' own expertise and improperly praised Plaintiff's competitor's products. (*Compare* ECF No. 2, Ex. 1 at 15 *with* ECF No. 21 at 23–24.) Additionally, Plaintiff's Opposition does not appear to support a UCSPA claim. For example, UCSPA prohibits a supplier from indicating it "has a sponsorship, approval, or affiliation the supplier does not have." Utah Code Ann. § 13-11-4(2)(i). In its Opposition, Plaintiff argues Defendants "falsely represent to affiliate with and possess independent legitimate review expertise." (ECF No. 21 at 23.) To the extent this suggests Defendants affiliate with some independent entity, the allegations in the Complaint do not afford Defendants or the Court with notice of Plaintiff's claim. The court is

unable to identify the allegedly-independent entity. To the extent the argument suggests Defendants falsely claim to be independent, Plaintiff does not demonstrate such a claim is viable under the UCSPA.[5] Accordingly, the court will order Plaintiff to provide a more definite statement of its UCSPA claim.

Before moving on, the court wishes to briefly address a defect in the briefing. The court refrains from addressing several arguments in Defendants' reply because Defendants did not adequately raise those arguments in their initial motion. For example, Defendants initially argued the UCSPA claim failed under Rule 8. (ECF No. 10 at 16) (quoting *Iqbal* at 678). Defendants' reply asserts the UCSPA claim fails under Rule 9(b). (ECF No. 24 at 9.) The Reply also raises the issue of whether any of Defendants are a "supplier" under UCSPA and whether that Act provides a cause of action only to a "consumer." (*Id.* at 9–10.)  Defendants may not raise matters for the first time in reply memoranda. *See* D.U. Civ. R. 7-1(b)(2)(A) ("Reply memoranda . . . must be limited to rebuttal of matters raised in the memorandum opposing the motion."). Accordingly, the court does not address arguments raised for the first time in reply.

### d.   Utah Truth in Advertising Act claim

Defendants argue not only that they are immune under the CDA, but also that the conduct alleged in the Complaint does not constitute advertising under the Utah Truth in Advertising Act ("UTIAA"). The court agrees. The UTIAA applies only to advertising. *See* Utah Code Ann. § 13-11a-1; *Procter & Gamble Co. v. Haugen*, 179 F.R.D. 622, 634–35 (D. Utah 1998), *aff'd in part, rev'd in part by* 222 F.3d 1262 (10th Cir. 2000). The UTIAA defines advertisement as "any written, oral, or graphic statement or representation made by a supplier in connection with the solicitation of business." *Id.* § 13-11a-2(1). Additionally, a supplier "means a seller, lessor,

---

[5] Likewise, the allegation of fraud is inadequately pled. *See infra* Part IV.a.1.

assignor, offeror, broker, or other person who regularly solicits, engages in, or enforces sales transactions, whether or not he deals directly with the purchaser." *Id.* § 13-11a-2(17).

First, assuming for the moment that the conduct alleged in the Complaint constitutes "advertising," Defendants are immune under the CDA. Plaintiff's Opposition only suggests the following conduct constitutes advertising: "the negative posted review history, the impact of the lack of positive reviews and the bad overall star rating." (ECF No. 21 at 26.) As discussed earlier, Defendants enjoy CDA immunity for publishing third-party reviews. The immunity extends to Defendants' exercise of editorial discretion, which includes selecting the reviews Defendants will publish, which ultimately affects the Overall Satisfaction Rating. *See supra* Part I.b.

Additionally, Plaintiff's Complaint does not target any of Defendants' advertising here. The Complaint alleges that Defendants only supply services outlined in the Member Accreditation Agreement. Plaintiff does not allege that Defendants sell anything beyond these services. Yet Plaintiff's UTIAA claim does not target any statement or representation Defendants made in connection with offering these services. Instead, Plaintiff merely concludes that Defendants' product reviews concerning Plaintiff's and others' products also constitute advertising. Plaintiff is incorrect because Defendants do not supply these products, or even any competing product. Accordingly, even assuming CDA immunity does not immunize Defendants, they did not make any statement as a "supplier in connection with the solicitation of business." Utah Code Ann. § 13-11a-2(1). For these two alternative reasons, Plaintiff's UTIAA claim must be dismissed.

### III. <u>Common law claims</u>

#### a. **Intentional Interference with Prospective Economic Relations**

Defendants contend that Plaintiff has not alleged the improper means required to support its intentional-interference claim. Plaintiff contends Defendants employed improper means by selecting which consumer reviews of Plaintiff's products to post and by making changes to pages

related to Plaintiff's products. As discussed above, Defendants are entitled to CDA immunity for much of the conduct about which Plaintiff complains. *See infra* Part I.b.

Next, Plaintiff does not sufficiently allege any wrongful statement contained in content Defendants created or developed. Presumably, Plaintiff believes ConsumerAffairs interfered with Plaintiff's economic relations by defaming Plaintiff and engaging in wire fraud. Plaintiff does not, however, allege enough facts to support those claims. *See infra* Part III.b. & IV.a.1. Similarly, the only portion of Plaintiff's extortion claim that survives dismissal does not describe interference with Plaintiff's economic relations with prospective customers. *See supra* Part II.b.

### b. Defamation claim

Defendants assert Plaintiff's defamation claim should be dismissed for lack of specificity and because the statements at issue constitute protected opinions. Plaintiff argues it adequately pled defamation by alleging ConsumerAffairs engaged in "conglomerate manipulation of . . . reviews, the exclusion and refusal to include positive reviews, the nuanced tactics taken to defame [Plaintiff's] brands from the outset, and the false star rating . . . ." (ECF No. 21 at 30.) Plaintiff also argues that ConsumerAffairs made defamatory statements by negatively rating Plaintiff's goods and manipulating the star rating related to Plaintiff's goods. Plaintiff also argues ConsumerAffairs wrongly ascribed Plaintiff's products a rating that is lower than its competitor who pays ConsumerAffairs and also lower than Plaintiff enjoys on a different review site.

### 1. CDA Immunity

As earlier discussed, CDA immunity prohibits treating Defendants "as the publisher or speaker of any information provided by another information content provider." 47 U.S.C.A. § 230(c)(1); *see supra* Part I. Thus, the court does not examine whether Defendants defamed Plaintiff by posting or removing consumer reviews from ConsumerAffairs' website. Likewise, the court does not consider ConsumerAffairs' motives for posting or removing any review

because this activity is part of ConsumerAffairs' protected editorial responsibilities. *See Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1170–71 (9th Cir. 2008) ("any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230"). With this in mind, the court turns to the defamation analysis.

### 2. Specificity

Plaintiff must "set forth in words or words to that effect" allegedly defamatory language. *Rowe v. DPI Specialty Foods, Inc.*, No. 13-708, 2015 WL 13047675, at *3 (D. Utah Aug. 20, 2015) (citing *Dennett v. Smith*, 445 P.2d 983, 984 (Utah 1968)). The Utah Supreme Court reasoned a "defendant should not be required to resort to the ofttimes expensive discovery process to drag from a litigant what he really intends to do to his adversary by a vehicle shrouded in mystery." *Dennett* at 984. "This specificity requirement is not only a Utah construct: federal courts have consistently interpreted Fed. R. Civ. P. 8(a) as requiring that defamation claims be pleaded with particularity to provide a defendant with fair notice." *Rowe* at *4. It is also true, as Plaintiff suggests, that "there is no Utah law directly requiring that the complaint also allege with complete specificity when, where, to whom, or by whom, the alleged defamatory statements were made." *Zoumadakis v. Uintah Basin Med. Ctr., Inc.*, 122 P.3d 891, 893 (Utah App. 2005). Nonetheless, *Zoumadakis* does not excuse Plaintiff from providing sufficient notice of its claims to Defendants. Even the more liberal defamation pleading standard requires Plaintiff to at least "paraphrase[] the allegedly libelous statement [in a manner that] afford[s] the defendant sufficient notice of the communication complained of to enable him or her to defend" the claim. *Rowe* at *4 (internal alteration omitted) (citing 50 Am. Jur. 2d Libel and Slander § 416). "This does not mean, however, that only the substance or gist of the charge need be proved by

equivalent words but, on the contrary, that so much of the statement must be proved as will justify and support the action." *Id.*

Plaintiff attempts to defend its defamation cause of action by discussing "conglomerate manipulation of . . . reviews, the exclusion and refusal to include positive reviews, the nuanced tactics taken to defame [Plaintiff's] brands from the outset . . . ." (ECF No. 21 at 30.) This is the precise tactic rejected in *Rowe*. Plaintiff must afford Defendants notice of the basis of Plaintiff's defamation claim. Terms such as "conglomerate manipulation of reviews" do not suffice.

On the other hand, the court finds Plaintiff has pled two matters with the requisite specificity. First, Plaintiff argues the Overall Satisfaction Rating, or star rating, is sufficiently specific. ConsumerAffairs argues the star rating allegations suffer other flaws, but ConsumerAffairs does not appear to argue it lacks specificity.[6] Second, Plaintiff argues that ConsumerAffairs implies Plaintiff primarily received complaints because ConsumerAffairs lists "Complaints and Reviews" available on Plaintiff's product pages, but lists "Reviews and Complaints" available on pages related to Plaintiff's competitor who pays ConsumerAffairs. Again, this quoted language affords ConsumerAffairs sufficient notice of Plaintiff's claims to allow ConsumerAffairs to defend itself. The court finds these allegations adequately specific.

### 3. Opinion

The Utah Constitution provides greater protection to statements of opinion than the U.S. Constitution. *See West v. Thomson Newspapers*, 872 P.2d 999, 1017 (Utah 1994). The Utah Supreme court adopted a non-exhaustive list of four factors for courts to consider when determining whether a statement constitutes an opinion rather than fact:

---

[6] The court earlier found Defendants enjoy CDA immunity for the Overall Satisfaction Rating. *See supra* Part I.b. The court analyzes the issue again here as an alternative basis for dismissal.

(i) the common usage or meaning of the words used; (ii) whether the statement is capable of being objectively verified as true or false; (iii) the full context of the statement-for example, the entire article or column-in which the defamatory statement is made; and (iv) the broader setting in which the statement appears.

*Id.* at 1018. The court may make this determination as a matter of law. *See id.*; *Jacob v. Bezzant*, 212 P.3d 535, 543 (Utah 2009). The court examines the two allegedly-defamatory statements the court found sufficiently specific. *See supra* Part III.b.2.

## A. Meaning of words used

The alleged statements' meaning suggests ConsumerAffairs' made only statements of protected opinion. First, a star rating does not convey any fact. Other courts have found star-rating systems similar to ConsumerAffairs' constitute opinions not actionable under defamation law. *E.g., Themed Restaurants, Inc. v. Zagat Survey, LLC*, 21 A.D.3d 826, 801 N.Y.S.2d 38 (2005) ("restaurant ratings and reviews almost invariably constitute expressions of opinion"); *Browne v. Avvo Inc.*, 525 F. Supp. 2d 1249, 1253–54 (W.D. Wash. 2007) ("Neither the nature of the information provided nor the language used on the website would lead a reasonable person to believe that the ratings are a statement of actual fact."). Plaintiff alleges the star rating relates to overall satisfaction. Ascribing a number of stars to one's satisfaction does not convey any objective fact. At most, this rating conveys a subjective notion of a user's, or group of users', satisfaction with a product.

Next, the words "Reviews and Complaints" convey no negative facts on their own. Moreover, the meaning of those words does not change based solely on changing the order to "Complaints and Reviews." These words indicate that ConsumerAffairs compiles reviews and complaints, but the words do not convey or imply any fact about ConsumerAffairs.

B.  <u>Whether statements can be verified as true or false</u>

Plaintiff does not identify any verifiable fact alleged or implied by the star rating. A consumer or ConsumerAffairs itself may prefer one brand to another. This type preference does not constitute any objective fact. The Utah Constitution protects such opinions.

Likewise Plaintiff suggests no verifiable meaning for the phrase "Complaints and Reviews." This language might only be proven true or false based on whether any complaints and reviews exist. Yet Plaintiff alleges that ConsumerAffairs actually compiles complaints and reviews. Plaintiff simply objects to the manner in which ConsumerAffairs does so. Thus, the only language in the Complaint that could be proven true or false is true according to Plaintiff.

C.  <u>Immediate context</u>

ConsumerAffairs allegedly made all of these statements in the same context: Internet pages related to product reviews of Plaintiff's and others' products. In this immediate context, the words are almost certainly understood as opinion rather than fact. Star ratings have become commonplace in the digital age. A reader understands these ratings to represent the subjective satisfaction felt by a product user or a group of users (or for purposes of the present argument ConsumerAffairs' own satisfaction). Such ratings are understood as opinion rather than fact.

Similarly, the heading for complaints and reviews taken in the context of a product review page strongly suggest opinion rather than fact. ConsumerAffairs receives and compiles consumer reviews and complaints for various products. In context of a specific product, the language regarding complaints and reviews merely underscores suggests no objective fact.

D.  <u>Broader context</u>

The greater context further suggests the material at issue represents only opinion. The review pages at issue can all be found on ConsumerAffairs website. Given this context, any reader

becomes even less likely to confuse the material for anything other than opinion. ConsumerAffairs devotes its entire website to product reviews submitted by third parties (and for purposes of this argument, with star ratings generated at least in part by ConsumerAffairs). Thus, even assuming any of the alleged statements can be attributed to ConsumerAffairs, the context strongly suggests the statements relate to opinions.

Based on the foregoing factors, the court finds the statements ConsumerAffairs makes on its website relate to matters of opinion protected under the Utah Constitution. Additionally, the court briefly discusses Plaintiff's reference to its alleged higher rating on another review site. This argument merely highlights the subjective nature of reviews. It offers no objective fact because Plaintiff cannot demonstrate that either review is objectively correct. By adopting Plaintiff's position that differing reviews on two websites present the basis for a lawsuit, the court would force product-review websites to face litigation unless they afford equal ratings to all reviewed products and companies. This position is untenable under any conception of the First Amendment. Review sites and their users may offer opinions regardless of whether those opinions are consistent with those of other reviewers. Such opinions are protected by the Utah Constitution and the United States Constitution.

## IV.    RICO claim

Defendants argue Plaintiff fails to allege (1) an enterprise, (2) a pattern of racketeering activity, (3) a predicate act, and (4) proximate cause. The court will address the second and third arguments, but based on its resolution finds it need not reach the first and fourth arguments.

### a.    Plaintiff does not set forth two RICO predicate acts

A "'pattern of racketeering activity' requires at least two acts of racketeering activity." 18 U.S.C.A. § 1961. Further, "while two acts are necessary, they may not be sufficient." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 (1985). The acts must also be related and suggest a

threat of continued illicit activity. Relatedness means the acts involve similar "purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics" rather than isolated events. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989). Continuity is a temporal concept involving either "a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* This requirement is "satisfied where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business . . . ." *Id.*

Plaintiff alleges ConsumerAffairs engaged in multiple RICO predicates consisting of wire fraud and extortion. (ECF No. 2, Ex. 1 at 19–20.) Defendants claim Plaintiff has not properly alleged either predicate. The court addresses each predicate in turn.

### 1. Wire fraud

Defendants claim Plaintiff fails to identify who engaged in the alleged fraud and fails to identify any false statement. Plaintiff argues it may proceed under a theory that the aggregate circumstances here defrauded visitors to ConsumerAffairs's website.

Fraud pled as a RICO predicate act must be pled with specificity under Rule 9(b). *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 989–90 (10th Cir. 1992). "Thus, a complaint alleging fraud must set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006) (quotations and alteration omitted). Yet, "the deception need not be premised upon the verbalized words alone." *Gusow v. United States*, 347 F.2d 755, 756 (10th Cir. 1965). "The arrangement of the words, or the circumstances in which they are used may convey the false and deceptive appearance." *Id.*

To support its fraud claim, Plaintiff argues "Defendants" engaged in an "open-ended web of deception of half-truths and non-disclosures to online customers by a self-described unbiased consumer advocacy organization . . . ." (ECF No. 21 at 35.) This argument itself does not illuminate the basis for Plaintiff's fraud claim. At most, it suggests one or more Defendants claimed to be unbiased, but Plaintiff offers no specifics. Similarly, the Complaint contains only conclusory allegations to support this claim. The complaint alleges: "ConsumerAffairs.com leads consumers to believe that it is an independent and trustworthy review site that can help consumers make an informed purchase decision." (ECF No. 2, Ex. 1 at 6.) The Complaint also alleges "Defendants . . . repeatedly engaged in knowing participation in multiple predicate acts of internet wire fraud" and incorporates the general allegations in the complaint. The Complaint does not provide the specificity Rule 9(b) mandates.

First, the Complaint offers no description of who made any alleged statement or undertook other actions to further the allegedly-fraudulent scheme. Even if the court elects to adopt Plaintiff's theory that a given statement constitutes "group-published information," Plaintiff does not explain why ConsumerAffairs can he held liable for Consumers Unified, LLC's, statements or vice versa. Second, Plaintiff does not describe how Defendants lead consumers to believe ConsumerAffairs is unbiased. While a fraud claim may be predicated on circumstance as well as overt statement, Plaintiff must allege the factual details he intends to rely upon to prove his fraud claim. The Complaint must allege the time, place, and contents of the representations. It must also identify the speaker, particularly where, as here, Plaintiff brings claims against three Defendants. To the extent Plaintiff intends to rely on circumstance to prove his fraud claim, the deceptive circumstances must likewise be pled with specificity, not alleged generally. Thus, Plaintiff fails to state a viable claim for wire fraud as a RICO predicate.

## 2. *Extortion*

The court ends its analysis here because Plaintiff does not argue that Defendants committed more than one act of extortion. (*See* ECF No. 10 at 37–39.) In the absence of any wire fraud predicate, the RICO claim fails even assuming Plaintiff properly alleges a single extortion claim. Accordingly, the RICO claim will be dismissed without prejudice for failure to plead a pattern of racketeering activity.

## ORDER

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss. (ECF No. 10.) The court denies Defendants' motion with regard to Plaintiff's Utah Unfair Competition claim. Additionally, the court orders Plaintiff to provide a more definite statement of its Utah Consumer Sales Practices Act claim. Plaintiff's remaining claims are dismissed without prejudice. Plaintiff may file an amended complaint within twenty-one (21) days of the court's order.

Further, if Plaintiff fails to provide a more definite statement of its Utah Consumer Sales Practices Act claim within twenty-one (21) days, that claim will also be dismissed.

Dated this 22nd day of June 2017.               By the Court:

Dustin B. Pead
United States Magistrate Judge