# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| ICON HEALTH & FITNESS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>CONSUMER AFFAIRS.COM, a Nevada corporation, CONSUMERS UNIFIED, LLC, a Nevada limited liability company; and DAVID ZACHARY CARMAN, an individual,<br><br>Defendants. | MEMORANDUM DECISION<br><br>Case No. 1:16-cv-00168-DBP<br><br>Magistrate Judge Dustin B. Pead |

## BACKGROUND

Subsequent to the court's order dismissing Plaintiff Icon Health and Fitness, Inc.'s ("Plaintiff") Complaint without prejudice, it filed an Amended Complaint. (*See* ECF Nos. 29, 34). In the Amended Complaint, Plaintiff again alleges that ConsumerAffairs.com ("ConsumerAffairs"), Consumers Unified, LLC, and David Zachary Carman (collectively "Defendants") defamed Plaintiff, violated Utah statutes, interfered with Plaintiff's prospective economic relations, and violated the Racketeering Influenced Corrupt Organizations Act ("RICO"). (ECF No. 34). The matter is presently before the court on Defendants' "Motion to Dismiss Plaintiff's Amended Complaint with Prejudice." (ECF No. 36). For the reasons set forth below the court will grant Defendants' motion, in part.

## STANDARD OF REVIEW

To survive, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court accepts factual

allegations "as true and construe[s] those allegations, and any reasonable inferences that might be drawn from them" in a plaintiff's favor. *Gaines v. Stenseng*, 292 F.3d 1222, 1224 (10th Cir. 2002). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Nonetheless, conclusory allegations without supporting factual allegations are insufficient to state a claim for relief. *See id.* ("Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'").

## ANALYSIS

### I. Plaintiff's defamation claim

#### a. Parties' Arguments

Defendants argue they are entitled to immunity under Section 230 of the Communications Decency Act ("CDA") as the court found in its June 22 Order dismissing Plaintiff's original complaint ("June 22 Order"). (ECF No. 29 at 9–13). Defendants contend that Plaintiff has not added any allegations that change the applicability of CDA immunity to Defendants' efforts taken to develop and publish their star rating. (*Id.*) Defendants also argue Plaintiff's bare assertion about contrived reviews on ConsumerAffairs' website fails to meet the pleading standard because Plaintiff only concludes the reviews are contrived without alleging facts to support that allegation. Next, Defendants argue that, even assuming CDA immunity does not apply, the star rating represents a protected opinion for the reasons the court discussed in its June 22 Order, and as other federal courts have found in similar circumstances. (*Id.* at 13–15).

Plaintiff argues that ConsumerAffairs acts as a "data analyst" rather than a publisher based on Wikipedia definitions of those terms. (ECF No. 44 at 2). Plaintiff contends ConsumerAffairs should be treated as a content provider (rather than mere publisher) under the CDA because ConsumerAffairs purports to create "Buyers Guides" that contain the star ratings. (ECF No. 44 at

4–7). Plaintiff concludes that ConsumerAffairs creates the star rating because it chooses a subset of consumer reviews to include when calculating the rating. (*Id.*) Also, Plaintiff urges that regardless of the third-party reviews involved here, ConsumerAffairs is still responsible for its own statements. (*Id.* at 9–14). Finally, Plaintiff contends that the brand rating is not a protected opinion, but rather a statement capable of defamatory meaning based on its intended audience and because it impacts Plaintiff's "brand" as that term is defined in an online article. (*Id.* at 7–9).

### b. Analysis

Plaintiff's briefing begins with a misstatement of the law that the court must correct to avoid any future misunderstandings. Plaintiff's first heading states: "The Court's Prior Decision no Longer Applies in Light of Plaintiff's First Amended Complaint and Jury Demand." (ECF No. 44 at 1). Plaintiff is incorrect. The court's earlier order still applies. While the court examines the Amended Complaint on its own merits, the June 22 Order represents the legal framework under which this case proceeds. Additionally, to the extent Plaintiff intended this heading as a request for the court to reconsider its earlier order, the court denies that request.

Next, the parties discuss a number of issues that need not be resolved for the court to decide Defendants' motion as it pertains to the Defamation claim. Likewise, Plaintiff's response is not organized in a way that facilitates meaningful comparison of the parties' positions regarding the defamation claim. Accordingly, to orient the reader, the court's analysis will be organized as follows: (1) determining whether the star rating is a matter of protected opinion; (2) examining whether Plaintiff identifies any other allegedly-defamatory statement; and (3) briefly reminding the parties of the court's earlier ruling regarding CDA immunity.

### 1. *As stated in the court's June 22 Order, the star rating represents a protected opinion, regardless of who created it*

Plaintiff's defamation claim will be dismissed because ConsumerAffairs' star rating represents a protected opinion and Plaintiff has not identified any other allegedly-defamatory statement. As it did in the June 22 Order, the court finds the star rating represents an opinion entitled to protection under the Utah Constitution. (*See* ECF No. 29 at 17–20). Defendants argue the allegations in the Amended Complaint do not contain facts that bring the star rating outside the protection provided by the Utah Constitution. (ECF No. 36 at 13–17). The court agrees. Plaintiff does not point to any newly-alleged facts that suggest the star rating is anything other than a protected opinion.

Rather than contend with court's earlier analysis in the June 22 Order, Plaintiff simply argues the court should focus exclusively on ConsumerAffairs' intended audience. (ECF No. 44 at 7). Yet the court already considered the audience in its earlier order when the court discussed the context of the alleged statements. The court found: "A reader understands [star] ratings to represent the subjective satisfaction felt by a product user or group of users" (or, crediting Plaintiff's arguments, as representing ConsumerAffairs' subjective satisfaction). (ECF No. 29 at 19). Plaintiff does not cite to, let alone make any attempt to distinguish, the court's earlier order.

Next, Plaintiff argues that an unflattering star rating will be harmful to its business. This argument is quite beside the point. The court does not doubt that negative opinions of a brand or its product will impact a company and its sales. Nonetheless, individuals and companies are entitled to have opinions, including negative opinions, of a product or company. The Utah Constitution protects these opinions from defamation suits even if they cause economic harm.

Finally, Plaintiff attempts to recast the star rating as an "expert buyers guide." (*E.g.* ECF No. 44 at 1). While this recasting creates superficial confusion, the court finds the distinction makes

no difference. The Amended Complaint alleges that the "expert buyers guide" contains only the star rating and links to consumer reviews. (*See* ECF No. 34 at 4–5). As discussed in the June 22 Order, the star rating is a matter of opinion and Defendants enjoy CDA immunity for third-party reviews. (*See* ECF No. 29). Based on the foregoing and for the reasons set forth in the court's June 22 Order, the court concludes the star rating represents an expression of protected opinion.

> 2. *Plaintiff does not identify any allegedly-defamatory statement in any review whether it was posted by Defendants or a third party*

Plaintiff's Amended Complaint does not identify any defamatory statement made by a third party. Instead, Plaintiff vaguely references 87 reviews it characterizes at "pervasively negative." (ECF No. 34 at 34). The court earlier warned Plaintiff that it must provide notice to Defendants and the court of any allegedly-defamatory statements. (*See* ECF No. 29 at 16–17). Plaintiff does not describe any allegedly-defamatory statement, aside from the star rating already discussed. Accordingly, Plaintiff has fails identify any alleged defamation.[1]

> 3. *Even if Plaintiff had identified other defamatory statements, Defendants are immune under the CDA for third-party reviews and Defendants' efforts to edit and publish those reviews.*

The court's June 22 Order found Defendants are immune under the CDA for any third-party information Defendants publish as well as their exercise of editorial discretion related to third-party information. (*See* ECF No. 29). The court need not deeply examine this issue in the context of Plaintiff's defamation claim because Plaintiff identifies no defamatory statement, as discussed above. Nonetheless, the court reminds Plaintiff of its earlier order to guide Plaintiff in the event later attempts to resurrect any defamation claim. Additionally, as stated earlier, the court declines Plaintiff's implicit invitation to reconsider the June 22 Order.

---

[1] Additionally, Plaintiff's vague allegations contemplate only "opinions" contained in reviews. (ECF No. 34 at 35). The court has now twice found that the Utah Constitution protects expressions of opinion, regardless of their negativity. *Supra* Part I.b.1; (ECF No. 29 at 17–20).

Based on the foregoing, and for the reasons discussed in the court's June 22 Order, Plaintiff's Fourth Claim for Relief, alleging defamation, will be dismissed.

## II. Utah Unfair Competition Act claim

### a. Parties' arguments

Defendants argue Plaintiff's Utah Unfair Competition fails because Plaintiff does not allege facts sufficient to show that Defendants engaged in the conduct described in that statute. (ECF No. 36 at 23–25). Defendants contend the star rating and their marketing statements cannot constitute "unlawful, unfair, or fraudulent" acts because Defendants cannot be held liable for the star rating and Plaintiff has not pled fraud with the requisite specificity required under Rule 9. Next, Defendants contend Plaintiff fails to allege a "material diminution in value of intellectual property." (*Id.* at 24). Finally, Defendants argue Plaintiff fails to allege "malicious cyber activity" because it removed allegations of extortion through influence peddling the court relied on in its earlier decision declining to dismiss this claim. (*Id.* at 24–25; *see* ECF No. 29 at 10–12).

Plaintiff argues it has alleged facts to establish unlawful acts that constitute malicious cyber activity for the same reason the court denied Defendants' initial motion to dismiss: Plaintiff alleges Defendants engaged in a scheme of extortion through influence peddling. (ECF No. 44 at 15). Plaintiff also contends it alleged a "material diminution in value of intellectual property" because it alleges Defendants' conduct decreased the value of its trademarked products. (*Id.* at 17–19). Plaintiff also contends that Defendants engaged in fraud. (*Id.* at 15–17).

### b. Analysis

Plaintiff fails to properly plead a claim under the Utah Unfair Competition Act because the Amended Complaint does not allege Defendants' actions materially diminished Plaintiff's intellectual property. To plead a claim of Unfair Competition, Plaintiff must allege Defendants' unlawful, unfair, or fraudulent conduct "le[d] to a material diminution in value of intellectual

property." Utah Code Ann. §13-5a-102(4)(a)(i)(B). While Plaintiff sets forth the statutory language (ECF No. 34 at 20), Plaintiff does not allege facts that could support its conclusory allegations. The court has reviewed Plaintiff's Amended Complaint and can find no allegations that suggest any of Defendants' actionable conduct caused diminution of the value of Plaintiff's intellectual property. Accordingly, this claim fails.

Plaintiff contends ConsumerAffairs "directly attacked [Plaintiff]'s brand . . . caus[ing] a material brand-wide reduction in the sale of the very goods that rely upon the brands so targeted." (ECF No. 44 at 18–19). This argument is somewhat vague, but appears to assert Defendants defamed Plaintiff, which tarnished their brand. The court earlier explained the reasons Plaintiff's defamation claim fails. *Supra* Part I.b. Plaintiff's allegations in support of its Utah Unfair Competition Act claim do not contain any additional detail regarding the alleged defamation. Accordingly, to the extent Plaintiff rests its Utah Unfair Competition Act claim on defamation, the claim likewise fails because Plaintiff has not adequately alleged that Defendants defamed them.

Also, Plaintiff's opposition mentions fraud several times throughout its argument on this point, but Plaintiff never does not identify any harm to its intellectual property caused by Defendants' alleged misstatements. Plaintiff alleges Defendants misrepresented the nature of reviews on ConsumerAffairs' website. Yet Plaintiff does not identify any misstatements the Defendants made about Plaintiff's products. *See also infra* Part VI.b.2 (discussing Plaintiff's failure to plead Defendants' alleged fraud was the proximate cause of harm to Plaintiff). Allegations of misrepresentations about ConsumerAffairs' reviews, standing alone, do not plausibly allege diminutions of the value of Plaintiff's intellectual property. Instead, such harm necessarily stems from review content. Plaintiff has thus far failed to allege that any of

Defendants' review content is actionable. This issue comes into sharper relief during the court's later discussion of Plaintiff's wire fraud claims. *See infra* Part VI.b.2. Also, the court is particularly cautious not to impose liability for any harm to Plaintiff's brands that was caused by statements of third parties because Defendants enjoy CDA immunity, which prevents such liability. (*See* ECF No. 29).

Finally, Plaintiff does not describe or allege any harm caused by the extortion scheme[2] independent of the alleged defamation already addressed. Instead, Plaintiff alleges and argues the extortion scheme was intended to harm Plaintiff directly by seeking to coerce it into paying ongoing fees to Defendants. (*See, e.g.*, 34 at 30–37) (stating Defendants "wished to force [Plaintiff] into paying Defendants' excessive and unreasonable fees."); (ECF No. 44 at 24). Plaintiff does not allege facts to suggest the extortion scheme caused any independent harm to their brand. The only inferences the court is able to reasonably draw suggest the brand was impacted by the alleged defamation. Without any allegation or argument suggesting the extortion scheme caused some harm to Plaintiff's brand independent of the insufficiently-alleged defamation, the court is unable to find Plaintiff has adequately pled that extortion scheme led to the diminution of in the value of Plaintiff's intellectual property. Based on the foregoing, Plaintiff fails to allege facts to suggest Defendants' alleged unlawful, unfair or fraudulent conduct led to the material diminution of Plaintiff's intellectual property.

---

[2] The court makes no finding about whether Plaintiff's amended extortion claim constitutes unlawful, unfair, or fraudulent conduct. The court only finds that Plaintiff has not alleged and argued the extortion itself caused material diminution to its intellectual property.

### III. Utah Consumer Sales Practices Act claim

#### a. Parties' arguments

Defendants contend the Utah Consumer Sales Practices Act ("UCSPA") only affords a private right of action to consumers, against suppliers, and in connection with consumer transactions. (ECF No. 36 at 26–27). Defendants note that the portion of the act creating a private remedy explicitly extends that remedy only to consumers. (*Id.*) Likewise, Defendants note that the statute states its purpose is to "protect consumers from suppliers who commit deceptive and unconscionable sales practices." (*Id.* at 26) (quoting Utah Code Ann. § 13-11-1).

Plaintiff argues UCSPA protects suppliers as well as consumers. (ECF No. 44 at 19–20). Plaintiff argues that it and ConsumerAffairs are both suppliers under UCSPA and Plaintiff should be allowed to proceed against Defendants under UCSPA because the statute does not expressly forbid such a claim. (*Id.*)

#### b. Analysis

Plaintiff's UCSPA claim must be dismissed because the UCSPA affords a cause of action only to a "consumer." The UCSPA explicitly allows a "consumer" to file suit for declaratory judgment, injunctive relief, and damages. *See* Utah Code Ann. § 13-11-19. As Defendants point out, the UCSPA clearly sets forth a cause of action for a consumer, but affords no such relief for a supplier, particularly against another supplier. The enacted statutory policy likewise strongly supports Defendants' arguments that UCSPA protects consumers from suppliers in connection with consumer transactions. *See* Utah Code Ann. § 13-11-2(2). As the Utah Court of Appeals recognized, "[t]he central purpose of the Sales Practices Act is 'to protect consumers from suppliers who commit deceptive and unconscionable sales practices.'" *Holmes v. Am. States Ins.*

*Co.*, 1 P.3d 552, 557 (Utah Ct. App. 2000). Plaintiff does not allege or argue that it is a consumer harmed by Defendants conduct. Accordingly, this claim must be dismissed.

Plaintiff's counterarguments are, at best, unconvincing. Plaintiff claims: "[UCSPA] is also designed to 'recognize and protect suppliers.'" (ECF No. 44 at 19) (citing Utah Code Ann. § 13-11-2(6)). Plaintiff's quotation is misleading because it selectively quotes the cited provision. The language Plaintiff cites comes from a provision indicating the UCSPA should be liberally construed: "to recognize and protect suppliers who in good faith comply with the provisions of this act." Utah Code Ann. § 13-11-2. Thus, the court agrees with Defendants that the statutory language expresses a policy to treat suppliers fairly where they attempt to comply with the statute. It does not provide suppliers protection from their peers. This finding is consistent with other explicit provisions in the statute such as the partial affirmative defense available to suppliers named in class action suits if those suppliers committed "a bona fide error . . . ." Utah Code Ann. § 13-11-19(4)(c).

Additionally, the court finds it need not review the UCSPA to determine whether it provides an implied right of action as Plaintiff suggests. The UCSPA provides an explicit right of action. Unfortunately for Plaintiff, the UCSPA only provides that private right to consumers.[3] Based on the foregoing, the court will grant Defendants' motion to the extent it seeks to dismiss Plaintiff's UCSPA claim because Plaintiff does not allege it is a consumer.

---

[3] Even applying Plaintiff's suggested factors; the court reaches the same outcome because the first three factors weigh against Plaintiff based on the limited express right of action provided by the statute and the apparently purposeful omission of a cause of action for suppliers.

### IV. Utah Truth in Advertising Act claim

#### a. Parties' arguments

Defendants argue Plaintiff has not alleged facts that constitute "advertising" under the Utah Truth in Advertising Act ("UTIAA") because Plaintiff alleges that Defendants made misleading statements to website visitors, but only offered to sell services to Plaintiff. (ECF No. 36 at 27). Defendants did not offer to sell anything to its website visitors or charge any fee to view the website. Accordingly, Defendants conclude, the allegedly-misleading statements were not made "in connection with the solicitation of business."

Plaintiff contends that it has properly alleged Defendants engaged in improper advertising in the form of statements Defendants made to individuals who read reviews on ConsumerAffairs' website. (ECF No. 44 at 21). Plaintiff argues that ConsumerAffairs is a "supplier" under the UTIAA because ConsumerAffairs provides product review services to its website users and those users engage in sales transactions by using services ConsumerAffairs provides, even if those users do not pay for those services. (*Id.*) Plaintiff also argues that those statements to website visitors are made "in connection with" Defendants' later attempt to sell services to Plaintiff. (ECF No. 44 at 21–22).

#### c. Analysis

Plaintiff adequately alleges Defendants engaged in conduct regulated by UTIAA by alleging Defendants made misleading marketing statements to visitors to ConsumerAffairs' website. The UTIAA prohibits one from, *inter alia*, "caus[ing] likelihood of confusion or of misunderstanding as to affiliation, connection, [or] association with . . . another." Utah Code Ann. § 13-11a-3(1)(c). Plaintiff alleges that ConsumerAffairs claims to act as a neutral third-party when it provides product reviews through its website. (ECF No. 34 at 6–7, 21). Plaintiff also alleges this claimed

neutrality is false because Defendants manipulate product reviews and rating of brands who agree to pay Defendants. (*Id.* at 8, 15–17). These allegations, taken with all inferences in Plaintiff's favor, suggest Defendants mislead website visitors about whether ConsumerAffairs provides neutral reviews of consumer products. This causes a likelihood of confusion or misunderstanding about ConsumerAffairs' affiliation, connection, or association with the brands who pay ConsumerAffairs to improve their rating.

Defendants argue they cannot be held liable under the statute because their statements do not constitute advertising under the UTIAA. The court disagrees; but untangling this argument requires understanding three interrelated statutory definitions. First, the UTIAA defines advertisement as "any written, oral, or graphic statement or representation made by a supplier in connection with the solicitation of business." Utah Code Ann. § 13-11a-2(1). Second, the UTIAA defines a supplier as one "who regularly solicits, engages in, or enforces sales transactions . . . ." *Id.* § 13-11a-2(17). Third, the UTIAA defines sales transaction broadly. The definition includes, in pertinent part, the: "transfer or disposition of . . . services . . . both tangible and intangible . . . or a solicitation or offer by a supplier with respect to any of these transfers or dispositions." *Id.* § 13-11a-2(15).

The court will address these statutory definitions in reverse order. The court begins by finding that ConsumerAffairs engages in sales transactions as defined by UTIAA because ConsumerAffairs offers to provide product review services to website visitors. The term sales transaction under UTIAA is not limited to transactions in which a consumer pays for the provision of services. The UTIAA expressly includes in the definition of sales transactions an "award[ed] by chance" and "other written or oral transfer[s]" of goods or services. *Id.*

Next, the court concludes ConsumerAffairs falls within the definition of a supplier under the UTIAA because Plaintiff alleges ConsumerAffairs regularly provides a product review service to website visitors. This particular term does not appear to be in dispute.

Finally, ConsumerAffairs allegedly touts its review services by representing their availability and quality, in writing, to its website visitors and also to those searching the Internet for various products or services. Accordingly, the court finds that ConsumerAffairs' communications constitute advertising even though website users do not pay ConsumerAffairs to view product reviews.[4] The court makes this finding based on the plain language of the UTIAA provisions cited. Accordingly, Defendants' motion to dismiss will be denied insofar as it seeks dismissal of Plaintiff's claims under the UTIAA.

Finally, the court rejects Plaintiff's argument that statements to website users are "in connection with" Defendants' attempts to sell services to Plaintiff for the same reasons the court rejected this argument in its June 22 Order. (*See* ECF No. 29 at 13–14).

### V. Intentional interference with prospective economic relations

Defendants contend Plaintiff's claim for intentional interference with prospective economic relations must be dismissed because Plaintiff fails to allege Defendants employed any improper means. To adequately allege improper means, Plaintiff must allege Defendants "means of interference were contrary to statutory, regulatory, or common law or violated an established standard of a trade or profession." *Anderson Dev. Co. v. Tobias*, 116 P.3d 323, 331 (Utah 2005). As Defendants correctly note, Plaintiff fails to address this argument.

While Plaintiff's UTIAA claim survives, Plaintiff has not alleged or argued any theory of proximate cause that does not depend on its defamation allegations. (*See, e.g.*, ECF No. 34 at 23–

---

[4] Also, the UTIAA allows even a person who is not injured to bring an action to enforce the provisions of the UTIAA. *See* Utah Code Ann. § 13-11a-4(2).

24). Plaintiff has not properly alleged defamation, as discussed above. *See supra* Part I.b. The court is unable to find Plaintiff has, or might, properly assert causation to support its intentional-interference claim without relying on the deficient defamation allegations. Accordingly, the court will grant Defendants' motion to dismiss insofar as it seeks dismissal of Plaintiff's claim for intentional interference with prospective economic relations because Plaintiff has not alleged or argued any theory that it suffered damages independent of the improperly-alleged defamation.

## VI. RICO claim

### a. Parties' arguments

Defendants argue Plaintiff fails to plead sufficient RICO predicates because both wire fraud claims and the extortion claim fail to state a cognizable cause of action. (ECF No. 36 at 31–34). Defendants contend the fraud claims do not allege falsity or reliance with the requisite particularity under Rule 9(b). Defendants suggest Plaintiff fails to plead an extortion claim for three reasons. First, there is no factual support for Plaintiff's conclusion that Defendants fabricated reviews. And Plaintiff no longer claims Defendants offered to influence reviewers for a fee. Second, the CDA immunizes Defendants for its alleged decision to post primarily negative reviews. Third, Defendants' offer to improve Plaintiff's ratings and reviews constitutes hard bargaining in the sale of legitimate advertising services rather than extortion.

Plaintiff argues it has pled two counts of fraud with particularity. (ECF No. 44 at 22–24). Plaintiff also contends that the law on which Defendants rely for their argument about "hard bargaining" rests on an extortion claim under California law, which differs materially from Utah's extortion law. (*Id.* at 24).

### b. Analysis

#### 1. *The court will not countenance Plaintiff's attempt to circumvent the court's ruling denying Plaintiff's request for overlength briefing*

The court declines to consider the portions of Plaintiff's argument that exceed the page limitation because the court earlier denied Plaintiff's motion to file an overlength brief. The court enjoys discretion to allow or deny overlength briefing because it constitutes "supervision of litigation." *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1112 (10th Cir. 2007). Plaintiff filed a motion seeking relief from the District of Utah's page limitations for its opposition brief. (ECF No. 41). The court denied this motion for the same reason it denied an identical motion from Plaintiff regarding its opposition to Defendants' first motion to dismiss: Plaintiff failed to set forth adequate justification for the relief it sought. (ECF No. 42; *see also* ECF No. 20). In its opposition memorandum, Plaintiff attempts to incorporate material in the facts section of its memorandum (not counted against the page limitation) into Plaintiff's argument section. (ECF No. 44 at 22). Plaintiff's argument section is already slightly over the page limitation. The court denied Plaintiff's request to file an overlength brief. The court will not allow Plaintiff to circumvent this ruling by inserting argument into its fact section and later cross-referencing that material in the argument section. Accordingly, the court declines to consider Plaintiff's argument contained on pages viii through xii of Plaintiff's opposition brief.

#### 2. *While Plaintiff need not plead justifiable reliance to set forth a RICO predicate of wire fraud, it must allege proximate cause*

Plaintiff failed to plead proximate cause with the requisite specificity under Rule 9(b). Defendants cite to *Tal v. Hogan* for the proposition that a plaintiff asserting wire fraud under RICO must allege several factors showing justifiable reliance. (*See* ECF No. 36 at 31) (citing 453 F.3d 1244, 1263 (10th Cir. 2006). Unfortunately for Defendants, the Supreme Court vitiated this rule when it decided *Bridge v. Phoenix Bond & Indemnity Company*, 553 U.S. 639 (2008).

The unanimous court in *Bridge* stated that reliance is not a necessary element for the fraud crimes enumerated in the RICO statute. *Id.* at 648–49 ("The common-law requirement of 'justifiable reliance' plainly has no place in the mail, wire, or bank fraud statutes") (alterations omitted) (quoting *Neder v. United States*, 527 U.S. 1 (1999)).

Nonetheless, Plaintiff has failed to properly allege that Defendants' alleged RICO violations were the proximate cause of any injury to Plaintiff. A RICO plaintiff must plead and prove the alleged RICO violations proximately caused the alleged injury. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457–61 (2006).[5] In *Anza*, the Court held that the plaintiff, who alleged a RICO defendant defrauded a third party, could not proceed on its claim because the court found plaintiff's alleged harm, which stemmed from the fraud, too remote. *Id.* at 458–59. As further relevant to the present case, the *Anza* court noted causation is often more attenuated when plaintiff alleges harm in the form of lost sales because "lost sales could have resulted from factors other than [Defendant]s' alleged acts of fraud." *Id.* at 459.

Here, Plaintiff has done less than even the plaintiff in *Anza*. Plaintiff's wire fraud allegations do not set forth any particular theory of proximate cause or even describe the specific harm Plaintiff suffered as a result of the alleged RICO predicates (separate from alleged defamation discussed elsewhere). Instead, Plaintiff alleges website viewers are harmed because they are misled about Defendants' purported neutrality. (ECF No. 34 at 25–28). Accordingly, the Amended Complaint does not allege Defendants' alleged wire fraud was the proximate cause of any particular harm to Plaintiff.

Additionally, while certain non-RICO portions of the Amended Complaint arguably can be read to assert a theory of cause in fact, the Amended Complaint does not allege proximate cause,

---

[5] As discussed in the June 22 Order, civil RICO claims must be pled with specificity. (ECF No. 29 at 21); *see Payn v. Kelley*, 702 F. App'x 730, 734 n.3 (10th Cir. 2017) (unpublished).

let alone with the particularity required by Rule 9(b). For example, Plaintiff alleges it lost sales as a result of ConsumerAffairs' false statements to consumers, coupled with "a falsely negative perception of ICON" compared to brands that pay Defendants. As an initial matter, Plaintiff's allegation of harm in the form of lost sales presents a particularly difficult circumstance under *Anza*, which Plaintiff does not address. *See Anza* at 459. Moreover, even Plaintiff's cause-in-fact theory appears to rely on Plaintiff's failed defamation claim and the attendant harm caused by defamatory statements. This also raises the question of whether the conduct is immunized under the CDA. The court need not reach the CDA issue at this stage, but mentions it in the even Plaintiff later attempts to resurrect this claim. Based on the foregoing, the court will dismiss Plaintiff's Third Claim for Relief, alleging civil RICO because it does not adequately plead at least two predicate acts.[6]

## VII. Dismissal without prejudice

Defendants request the court dismiss Plaintiff's claims with prejudice. (ECF No. 36 at 34). The court declines to do so because Defendants have not provided an adequate basis for dismissal with prejudice. "A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006). The court rests its decision to dismiss Plaintiff's claims largely on matters Plaintiff has not pled, but the court cannot conclude on the pleadings alone that amendment will be futile. For example, Plaintiff has not identified any defamatory statement Defendants made and fails to allege fraud with specificity. Yet this could be evidence of clumsy pleading rather than futile claims. Nonetheless, the court understands Defendants' frustration at Plaintiff's second failed attempt to state several claims.

---

[6] Based on this conclusion, the court does not reach Defendants' remaining arguments.

Accordingly, the court will not grant Plaintiff leave to amend in this order, unlike the court's June 22 order. If Plaintiff wishes to amend its complaint, it must file an appropriate motion setting forth any reasons the court should allow amendment.

## **ORDER**

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss. (ECF No. 36). Plaintiff's claims of defamation, violation of the Utah Unfair Competition Act, violation of Utah Consumer Sales Practices Act, intentional interference with economic relations, and civil RICO are dismissed without prejudice. The remainder of Defendants' motion is denied.

Dated this 6th day of March 2018.

By the Court:

_____
Dustin B. Pead
United States Magistrate Judge